IN THE

# SUPREME COURT

OF THE

## STATE OF LOUISIANA.

WESTERN DISTRICT:
ALEXANDRIA, OCTOBER, 1833.

### BROWN vs. FRANTUM.

APPEAL FROM THE COURT OF THE SIXTH DISTRICT, THE JUDGE OF THE SEVENTH PRESIDING.

WESTERN DIS
October, 1833.

BROWN
vs.
FRANTUM.

| 6 | 39 |
| 111 | 392 |

A bequest was made of a tract of land "containing ten arpents front with the ordinary depth, to be laid off on the right hand side of bayou Bœuf, descending at a small distance below Robinett's line at a gully." It was proved there was no gully below R's. line, but there was one five arpents above it. Held as there is no gully below the line, the line must be taken as the boundary; and that the intention of the donor cannot be defeated by such an error as to the situation of the gully.

The right acquired by each of two purchasers of the same tract of land from the same vendor, the title of either of whom requires for its validity as to third persons, only a due registry before the other, is a subject of sale or legacy.

A. and B. verbally agreed that one might sell any part of the other's land, and the other was bound to approve the location. A. had sold a certain quantity of B's. land, and it was held that B. might bequeath the same quantity of A's. land.

A verbal agreement for land or slaves is not null and void; its defect relates solely to the proof; and if one of the parties acknowledge the agreement, or permits parol evidence of it to be given without opposition, the agreement will be carried into effect.

Confirmative acts dispense with the exhibition of the primordial title when its tenor is therein specially set out.

Where the heirs of a testator acquire a title in that quality to property in consequence of a right existing in their ancestor at the time of his death, and which right he had made the subject of a legacy, the title so acquired accrues to the benefit of the legatee.

A mandatary under a special power must confine himself strictly within the limits assigned to him, and those dealing with him must at their peril see that he does not exceed his authority; but they need not, in search of his powers and their limitations, look beyond the instrument of mandate. ,

A declaration that the vendee is acquainted with the title, means that he has a knowledge of the title under which his vendor acquired the property, but not he knows the vendor has divested himself of that title.

The plaintiff sues for a tract of land on bayou Bœuf, containing ten arpents front by forty, being part of the Indian purchase, and set apart in the division to Samuel L. Wells, and by him divised to his son Willis, who sold it and conveyed it to the plaintiff's late husband. She prays to be restored to possession and quieted in her title.

The defendant sets up title and pleads the prescription of ten years in pursuance of uninterrupted possession under a good title.

The plaintiff derives her title from the following clause in the last will and testament of S. Levi Wells, made in 1815. "I give and bequeath to William Wells, &c., a tract of land containing ten arpents front with the ordinary depth, to be laid off on the right hand side of bayou Bœuf descending, a small distance below Robinett's line, &c." Willis Wells sold and conveyed this land to Hugh Brown, late husband of the plaintiff. *Vide* 3 *La. Rep.* 128.

PORTER, J., delivered the opinion of the court.

This is a petitory action. The plaintiff claims ten arpents of land in front on the right bank of bayou Bœuf, embraced within the limit of the purchase made by Millar and Fulton of three tribes of Indians, an acquisition which has been fruitful of much litigation. In the present case both parties claim under persons who were partners or joint proprietors of the lands sold to the persons just mentioned.

The plaintiff's title must be first examined. She claims under Levi Wells, who was admitted by Millar and Fulton to share with them in the purchase which they made of the Indians, and mediately of Millar, from whom she alleges Wells acquired the *locus in quo*.

Sometime after the sale from the Indians, Millar, Fulton, Wells, and t larke, proceeded to m ke a survey of the premises, and to lay off the portion each was entitled to. The facts relating to this transaction, are circumstantially detailed in the case of *Compton* vs. *Mathews*, and need not be repeated here, 3 *La. Rep.* 28.

It is proved by parol evidence, that an agreement not reduced to writing, existed between Millar and Wells, that in case either of them sold lands within the limits assigned to the other, that the same quantity should be given out of the portion of the vendor in lieu thereof. This statement is made in the belief that it is justified by the proofs in the cause. The objections made to its correctness will be noticed hereafter.

In pursuance thereof, Millar sold land within the limits of the land set apart to Wells, and on the 28th of May, 1815, Wells, by last will and testament, bequeathed to his natural son Willis Wells, ten arpents of land, embraced by the portion which fell to Millar in the original partition. The description given to this legacy in the will is in the words, "I give and bequeath to Willis Wells, and his heirs and assigns for ever, a tract of land containing ten arpents front with the ordinary depth, to be laid off on the right hand

6

side of bayou Bœuf, descending, at a small distance below Robinett's line, at a gully."

Subsequent to the execution of this testament, and previous to the month of April, 1820, Millar gave a power of attorney to one Scott, to relinquish to the heirs of Wells his right to so much land within the limits of his part of the Indian purchase, as would be equivalent to the quantity he had sold within the portion of their father. As the power conferred by this mandate, has been the subject of much contest at the bar, and as a true understanding of it, has an important influence on the rights of the parties now before us, it is proper to set it out at length. What follows is a copy of that given in evidence.

"Know all men by these presents, that whereas, William Millar and Levi Wells, in his life time, held each a portion of the land purchased of the Chocto, Pascagoula, and Biloxi Indians, situated on the bayou Bœuf, in the parish of Rapides, and whereas, the lines were not ascertained, and whereas, it was understood that William Millar might dispose of certain lands at designated places, particularly to Clements and Gardner, upon his conveying to the said Wells as much land as should appear to belong to the said Wells when the lines should be new and the quantity ascertained. Now, therefore, I William Millar, do by these presents, constitute and appoint Thomas C. Scott, my true and lawful attorney for this special purpose, to convey to the heirs of Levi Wells as much land out of my claim as shall appear to fall within their lines which I have sold, but without any warranty: and I will warrant what he shall do in the premises."

On the 17th April, 1820, the agent thus appointed, and the heirs of Levi Wells, passed an act which was duly recorded in the office of the parish judge of the parish of Rapides, where the land now in dispute is situated. By this act the attorney of Millar relinquished to the heirs of Wells, thirty-seven arpents in front to begin on the lower corner of a tract of land belonging to the estate of Levi Wells, thence down the bayou, descending. It is expressed that the

relinquishment is made without warranty, for any defect in the title, or dimunition of the land, the purchasers acknowledging themselves to be well acquainted with the title and satisfied therewith. On the other part, the heirs of Wells relinquish to Millar the title to ten arpents in front, sold by him to Gardner, and twenty-seven arpents in front sold to Clements. At the close of the instrument the following clause is found, "for a more full explanation of this sale or exchange reference is made to the power of attorney of William Millar hereto annexed." That power has been already set out.

Willis Wells, the legatee of Levi Wells, sold the ten arpents in front bequeathed to him, to the husband of the plaintiff. Under this purchase, she in her own right, and as her representative of the heirs of her husband, claims the *locus in quo*.

The defendant's pretensions rest on a sale made by Millar to Daniel Clarke, on the 19th March, 1812. The instrument was executed before Pierre Pedescleaux, a notary public of New-Orleans, and conveys twenty-five arpents of land on the front of the bayou Bœuf, with the depth which may be found, bounded above by lands of Levi Wells, and below by those of the vendor. This sale was prior in point of time to the bequest made by Wells in his will, and to the relinquishment made on the part of Millar of the land so bequeathed, but it never was recorded in the parish where the property is situated. A great deal has been said on the part of the plaintiff, in regard to the true location of the land which passed by this conveyance, and it has been strenuously contended, that it was contemplated to convey premises lying at a great distance from the place now in dispute. On the part of the defendant it has also been seriously urged, that the relinquishment on the part of Millar does not embrace the *locus in quo*. Neither of these objections appears to us well founded. The evidence satisfies us, that both conveyances cover the contested land, and that the case must be decided on the strength of the respective titles.

The first ground taken in opposition by the plaintiff's

title, is the want of identity between the land bequeathed to Willis Wells, and that now sued for. This objection rests principally, if not solely, on a fact proved in evidence, that there is no *gully* between Robinett's line, but that there is one five arpents above it, and that a gully a small distance below the line of Robinett is given in the will of the testator as the boundary. By an article of our old code in force at the time the testament was made, and at the time it was opened, it is provided, that "if any obscurity be found in the meaning, or the terms of the disposition, either as to the person to whom it is made, *or as to the thing bequeathed*, the judge must endeavor to discover what was the intention of the donor. If then there be no *gully* below the line, we must take that line as the boundary. It is clear the intention of the donor was to give ten arpents of land, and the intention cannot be defeated by an error as to the situation of the *gully*, more especially as we have another limit which enables us to give the bequest a specific location. *C. Code,* 253, *art.* 200.

It is next objected that the gift to Willis Wells is null and void, because by a positive provision of our code, the legacy which is made of the property of an other is declared to be so, whether the testator knew the fact or was ignorant of it. In the application of this principle of law to the case before us, it is urged, that at the time and before Wells bequeathed the land to his son, Millar had already sold it to Clarke. It was consequently Clarke's property, and could not be the subject of a testamentary disposition in Wells' will. This argument overlooks the familiar doctrine of our law that the purchaser of real estate may be the owner *quoad* the vendor, and that he is not so in relation to third persons who may acquire a real right into or on the thing, until his contract is duly registered in the parish where the property is situated. Our law declares that the sale of the property of another is null and void, and yet nothing is more common than that the second vendee who *bona fide* buys, and records his title, holds the object bought in preference to a previous purchaser who neglects this formality. In such a case there-

A bequest of a tract of land "containing ten arpents front with the ordinary depth, to be laid off on the right hand side of bayou Bœuf descending, at a small distance below Robinett's line at a gully." It was proved there was no gully below R's line, but there was one five arpents above it. Held ast here is no no gully below the line, the line must be taken as the boundary; and that the intention of the donor cannot be defeated by such an error as to the situation of the gully.

fore, both are owners in relation to their vendor, and either may become so as it respects all other persons by duly enregistering his contract. This right may in our opinion be the subject of a sale or of a legacy. Any other construction would lead to a curious result. If the party lived and recorded his deed first, he would become the owner. And if he died his heirs could not do the same thing, and with the same result. Yet, if he gave it as a legacy, his title was destroyed, because it was the property of another! But if it was the property of another, in the sense contended for, how could it become that of the party who recorded, by an act which surely proceeded from him ? *O. Code*, 240, *art.* 147, *ibid.* 348, *art.* 20.

WESTERN DIS
*October*, 1833.

BROWN
*vs.*

FRANTUM.

The right, acquired by each of two purchasers of the same tract of land from the same vendor, the title of either of whom requires for its validity as to third persons, only a due registry before the other, is a subject of sale or legacy.

This brings us to the inquiry whether at the time Levi Wells made his will, he had such a right in the land, as enabled him, in case that right was subsequently evidenced by a written act duly registered, to hold the property. It is in evidence that a parol agreement existed between Millar and Wells, that if a buyer from either should be located within the portion of the *Indian purchase* set apart to the other, they would approve of the location and take in lieu thereof the same quantity of land within the limits belonging to the vendor. In other words they agreed to exchange lands in case the contingency contemplated should occur. That contingency had happened before Wells made his will, and before Millar sold to Clarke.   In the years 1809 and 1810, Millar sold one tract of land to Gardner, and an other to Clements, both of which he located within the portion that belonged to Wells. These sales gave to Wells a right to take the same quantity within the part which had fallen to Millar in the partition. But it is urged the choice of the land out of which the reimbursement was to be made, belonged to Millar, and that Wells could not select a particular spot, and make it either the object of a sale, or gift.   In looking into the correctness of the position, it is unnecessary to inquire in whom the right of selection would be vested, under a contract where the owner agreed to sell an indefinite part of a larger tract of land for a sum of money.   The contract before us must be

carried into effect, according to the intention of the parties, as fairly deduced from the stipulations made by them. The construction contended for would violate that intention, as we understand it, would cause great unequality in the rights of those who contracted, and might have worked gross injustice. The agreement as proved, proceeds on the idea that one of the parties might sell *any* part of the land belonging to the other, and the party whose land was thus sold, was bound to approve the location. Reciprocity, therefore, required that the same latitude of choice should be given to the party who was to be reimbursed. Wells might, in the first instance, have sold any part of Millar's tract, and his authority to do so, was certainly not diminished by Millar having previously sold within his, Well's, portion. Any other construction would give an undue advantage to the party who first exercised the right which the agreement conferred. If this matter was doubtful, which it is not, we have the construction given to the contract by one of the parties, with the express consent of the other to do away that doubt. Wells did dispose of land of Millar according to Well's choice, and Millar subsequently ratified it. We therefore think that at the time Wells made his will, he had a right to any portion of Millar's tract equal in quantity to that which the latter had sold in the portion belonging to him.

A. and B. verbally agreed that one might sell any part of the other's land and the other was bound to approve the location; A had sold a certain quantity of B's land, it was held that that B might bequeath the same quantity of A's land.

But it is further objected that the interest shown to exist in Wells to the land, which enabled him to make it the object of a legacy, is proved only by parol evidence, that his contract was not reduced to writing, and that it was null and void. This court has repeatedly decided that a verbal agreement for land or slaves, even under the provisions of our code was not null and void. That the defect which such a contract presented, related solely to the proof, and if one of the parties acknowledged the agreement, or permitted parol evidence to be given of it without opposition, it was the duty of a court of justice to carry it into effect. Here we have written proof from the vendor that such a parol agreement did exist. The conveyance of the agent of Millar under the

A verbal agreement for the sale of land or slaves is not null and void, its defect relates solely to the proof; and if one of the parties acknowledges the agreement or permits parol evidence of it to be given without opposition, the agreement will be carried into effect.

WESTERN DIS
*October*, 1833.

BROWN
*vs.*
FRANTUM.

power of attorney, expressly recognises it. This conveyance is not a new contract as was contended in argument, it is based on, and recognitive of an agreement previously existing, and confirmative acts dispense with the exhibition of the primordial title when its tenor is specially set forth. In this instance Mill ir's power of attorney states the agreement which had existed, and the conveyance of the agent refers to that power for a more ample explanation of the act passed by him. *O. Code*, 308, *art.* 237.

Confirmative acts dispense with the exhibition of the primordial title when its tenor therein specially set forth.

It is next urged that the confirmation made by Millar to the heirs of Wells enured to their benefit, and not to that of the legatee. We have some doubt whether this objection can be made by a third party against him who is in possession under the will. But we have no doubt that when the heirs of a testator, acquire a title in that quality to property, in consequence of a right existing in their curator at the time of his death, and which right he had made the subject of a legacy, that the title so acquired, enures to the benefit of the legatee, because it was the duty of the heirs to carry the will into effect. *O. Code*, 240, *arts.* 141 and 142.

Where the heirs of a testator acquire a title in that quality to property, in consequence of a right existing in their ancestor at the time of his death, and which right he had made the subject of a legacy; the title so acquired enures to the benefit of the legatee.

This brings us to the last point of importance in the cause, viz: the want of authority in Millar's attorney to convey to the heirs of Wells the *locus in quo*. The power has been already set out. It authorises the agent to convey the same quantity of land within Millar's claim, which Millar may have sold out of Wells'. It is urged that it never could have been in the contemplation of the principal to have confered authority on his agent to convey to the heirs of Wells, lands which had already been alienated to Clarke, and thus make him responsible in damages. This we readily believe. Authorities have been cited to us, that mandataries under a special power must confine themselves strictly within the limits assigned to them, and that those who deal with them must at their peril see they do not exceed their authority. To which doctrine we also accede. But this doctrine like every other must be applied with these limitations which, necessarily, belong to it. It is true the party contracting must at his peril see the agent does not exceed his authority, but

A mandatary under a special power must confine himself strictly within the limits assigned to him, and those dealing with him must at their peril see that he does not exceed his authority: but they need not in search of his powers and their limitations look beyond the instrument of mandate.

WESTERN DIS
October, 1833.

BROWN
vs.

FRANTUM.

A declaration
that the vendee is
acquainted with
the title, means
that he has a
knowledge of the
title under which
his vendor ac-
quired the pro-
perty, but not he
knows the ven-
dor has divested
himself of that
title.

how is he to see and judge of that in the case of an express authority conferred, save by an examination of the written instrument which gives it. He has a right to believe that all the limitations which it was intended to place on the mandatary, would be there expressed. He is not compelled to look beyond it. He is not obliged to inquire, whether there may not be facts and circumstances which should have induced the principal to place restrictions on the authority, which he has conferred. The law does not presume, and it does not require of the third person to suspect that any such exist; such a doctrine would put it in the power of principals to entrap every one who deal with their agents, and place every one who contracted with them at their mercy. A power of attorney is to be construed by courts, like every other instrument. It should receive such an interpretation as fairly results from the language used, when considered in relation to the subject matter. And when it is examined in that view and it leads to the conclusion, that the agent and the other party were both justified in beleiving it authorised the contract, relief cannot be obtained against it, because facts existed which should have induced the principal to place limitations on the power granted. In the present instance authority was conferred to convey out of the lands, which the principal had acquired from the Pascagoula, Chocto and Beloxi tribes of Indians, a sufficient quantity to replace those which the principal had sold belonging to Wells. The agent is confined to no particular portion, nor limited to any part of the tract. The whole is placed under his authority. If a stranger under such a power had purchased the thirty-seven arpents conveyed to the heirs of Wells, a question could hardly be raised, that he had acquired a good title, and we see nothing in the facts of the case which would authorise us to place them on a different footing. It has indeed been argued that in consequence of their acquiring without warranty, and their declaration that they were well acquainted with the title which Millar had to the premises, that they cannot now say, they were unacquainted with the sale to Clarke. But the court cannot

sent to this reasoning. It extends the meaning of the expressions further in an opinion than they warrant, and beyond the intention of the parties. A declaration that the vendee is acquainted with the title, means that he has a knowledge of the title, under which his vendor holds the property; not that he has a dnowledge the vendor has divested himself of that title.

The objections made to the plaintiff's title being removed, the case is one of the utmost simplicity and clearness. The conveyance under which the plaintiff's claims the premises, though last made, was first recorded in the parish where the land lies, and must prevail.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled and reversed, and it is further decreed, that the plaintiff do recover of the defendant the premises claimed in the petition, with costs in both courts.