JAMES PLUMMER, PLAINTIFF, APPELLANT, V. EDMUND P. BUCK, LAURA V. BUCK, J. R. McKNIGHT, AND SAMUEL B. McEWEN, DEFENDANTS AND APPELLEES.

1. **Real Estate:** FRAUDULENT SALE: CONSIDERATION. Upon the evidence set out in the body of the opinion, *Held*, That the price at which the real estate in question was sold by the attorney in fact of the vendor was not so grossly inadequate as to be notice to the vendees or subsequent mortgagee of any fraudulent intent on the part of said attorney, even if such intent existed at that time.

2. ————: POWER OF ATTORNEY: TERMS OF SALE. P. gave M. a power of attorney to sell and convey a tract of land. M. conveyed the land to B. and B., and under an arrangement contemporaneously made, whereby McE. was to make a loan of money to B. and B. to enable them to pay for said land, took notes and a mortgage from B. and B. payable to himself, and immediately endorsed the notes and assigned the mortgage in his individual capacity to McE., who thereupon paid the money into the hands of a land agent, who immediately passed it over to M. *Held*, That the same was a *sale* for cash within the terms of the power of attorney, and not a *barter*, nor a sale on time.

APPEAL from the district court of Lancaster county. Heard below before POUND, J.

*Burr & Parsons,* for appellant, cited: *Taylor v. Galloway,* 1 Ohio, 232. *Cleveland v. Bank,* 16 Ohio State, 236, 269. *Mott v. Smith,* 16 Cal., 557. *Reese v. Medlock,* 27 Tex., 120. *Hampton v. Moorhead,* 17 N. W. R., 203, *Cones v. Neligh,* 5 Neb., 302. *Hunt v. Rhodes,* 1 Peters. 1. *Wilkinson v. Getty,* 13 Iowa, 157.

*Harwood, Ames & Kelly,* for defendants and appellees E. P. and Laura V. Buck, and *J. A. Marshall,* for appellee Samuel B. McEwen.

COBB, CH. J.

This action was brought in the district court for the pur-

pose of enjoining the defendant, S. B. McEwen, from ne-
gotiating or transferring certain notes and a mortgage exe-
cuted by the defendants, Edmund P. Buck and Laura V.
Buck, to the defendant, J. R. McKnight, and by him
endorsed to the said McEwen, and to have the said mort-
gage canceled of record; also to have the defendants,
Edmund P. and Laura V. Buck, reconvey certain lands
to the plaintiff, and for the quieting and confirming of the
title thereto in him. There were answers on the part of
each of the defendants except McKnight, who having ab-
sconded was not served with process, a trial and judgment
for the defendants, and the plaintiff brings the cause to this
court on appeal.

The facts of the case, as appear from the record, are as
follows: The plaintiff resides in the neighboring county
of Johnson, and owned the quarter section of land in
question in the southeastern part of Lancaster, near the
village of Firth. J. R. McKnight resided at Firth, a
teacher, and stood fair in the community. The Bucks were
a young husband and wife, lately come from somewhere in
Illinois to the neighborhood of Firth. McEwen resided
in the city of Lincoln, where he had some money to loan
on real estate security. He being temporarily absent from
the state, had left the business of loaning his money in the
hands of his attorney, J. A. Marshall, Esq., of the latter-
named place.

From the date of the paper itself, it appears that on the
1st day of November, 1881, the plaintiff executed, duly
acknowledged before competent authority, and delivered
to the said McKnight a power of attorney to sell and con-
vey the land in question. This power is unusually full,
and indicates that the plaintiff placed unbounded confidence
in the integrity as well as in the judgment of McKnight. It
appears from the testimony of the Bucks that at a certain
time a week or so anterior to the date of the power of at-
torney, McKnight approached them with a proffer to sell

them the land, told them that it was in his hands to sell, and named two thousand dollars as the price. I quote from the testimony of E. P. Buck: "I told him that I would not give it. * * * I asked him his terms. He said that he did not know then. He would see. So he came back again shortly afterwards, a few days afterwards, and I told him that I would give him seventeen hundred dollars for it. He wanted to know what I would give him in cash, and he would say (see) what the old man would do. I told him seventeen hundred dollars, provided we could get a loan on the place of twelve hundred dollars. He said he would see what the old man would say, and he came back and said that he would take that by being paid all cash."

Q. Did he say anything about getting a loan for you?

A. Yes, I told him to see about getting that, and he said that he would. We wanted him to take—to let the old man take our notes and make payments, but the old man, he said, would not sell for that unless it was cash. * * * He said that he would go and see if he could get a loan on the place. He went to see, and then came and told us that he thought he could get the loan, and fixed a day for us to come to Lincoln.

It further appears that McKnight had come to Lincoln and applied to J. H. McMurtry for the loan on behalf of the Bucks, as spoken of by Buck in his testimony above; that McMurtry, knowing of this money of McEwen's under the control of J. A. Marshall, gave encouragement that if the party who was going to buy the farm was going on it to live and improve it, that a loan could be got on it. It further appears that on the 8th day of November, 1881, McKnight and Mr. and Mrs. Buck came to Lincoln for the purpose of obtaining said loan and closing up the transaction. Mr. or Mrs. Buck had five hundred dollars in Illinois which was being sent to them by express, which was to be received by McKnight on the purchase of

the land when it came, so that the amount to be borrowed on the land was twelve hundred dollars. Upon application being made by these parties, through McMurtry, to Marshall for a loan of twelve hundred dollars of McEwen's money, Marshall suggested that the note or notes and mortgages be made by the Bucks to J. R. McKnight and the notes be endorsed and the mortgage assigned by him to McEwen. He gives as a reason for this that he considered the land as rather a low or scant security for twelve hundred dollars, and he considered McKnight's name as an indorser on the note as an additional security. So the note or notes and mortgage were executed by Mr. and Mrs. Buck to McKnight, and the notes by him indorsed and the mortgage assigned to McEwen and delivered to Marshal for him, and twelve hundred dollars of McEwen's money was drawn from the bank by Marshall and paid over to McKnight. A few days thereafter the five hundred dollars consigned to Mrs. Buck by express from Illinois was received and paid to McKnight, making seventeen hundred dollars in all.

It is alleged and proven on the part of the plaintiff that said McKnight never accounted to or paid over to the plaintiff any part of the said seventeen hundred dollars by him received for the said land, and I think it is admitted that a short time after these transactions McKnight absconded from the state and country.

Plaintiff and appellant takes the ground here, as he did in the court below, that the transaction as above narrated, between his attorney and the defendants, the Bucks and McEwen, was a barter and not a sale, and hence was not within the power as expressed in the power of attorney. Also, that the price at which the land was sold was so grossly inadequate as to be notice of the fraud and bad faith of McKnight to all of the other defendants.

As to the latter propositions, there was sufficient contradictory evidence to place it out of the power of this court

to say that the district court should have found that the price at which the land was sold was grossly inadequate. The plaintiff himself fixed the value of the land at thirty-five hundred dollars. His son-in-law, Bobst, a witness in his behalf, put it at from $25 to $30 per acre; Mr. Wessells at $20 per acre; Mr. Evans at from $20 to $25 per acre; Mr. Howard at the same; Mr. Buman at $21 per acre, and Mr. Tenhauser at from $2400 to $2500 for the tract. Of the defendants' witnesses, Mr. Baily put it at $14 per acre, Mr. Moore at from $13.50 to $14 per acre, Mr. McMurtry at from $10 to $12 per acre, Mr. Hossack at from $10 to $12.50 per acre, and Mr. Holmes at from $9 to $10 per acre. The three latter are well known real estate dealers.

We cannot adopt the view of counsel for appellant, that the facts in this case constitute a case of *barter* or exchange of properties, nor that it was a case of sale on credit. Aside from the dishonesty, defalcation, and absconding of McKnight, which can by no means be charged to either of the answering defendants, the case presents nothing wrong or even unusual. From the plaintiff's own showing on the witness stand, he sent the power of attorney to McKnight requesting him to sell the land for the best price he could get, in cash down, naming no price, and placing no limitation on his instructions whatever. The price, though low, according to the weight of testimony, was not grossly inadequate, and was within the instructions, even had any instructions, except those borne on the face of the power of attorney, been brought home to the vendees, which is not claimed.

It was not inconsistent with the duty which McKnight owed to his principal to receive the notes and mortgage of the defendants, Edmund P. and Laura V. Buck, and endorse the notes and assign the mortgage (which latter, however, was unnecessary) to the defendant McEwen, to enable them to secure a loan whereby to perfect the purchase, and

I venture to say that similar transactions are quite frequent in land negotiations. No liability was thereby attempted to be saddled upon the plaintiff, and the transaction was no notice to the defendants or either of them of bad faith on the part of McKnight, or that he intended to defraud his principal out of the proceeds of the sale.

It is also urged that as the consideration named in the deed was a greater sum than that actually given that circumstance was constructive notice to the vendees of bad faith on the part of the attorney. It seems from the testimony of the female defendant that she did notice that clause in the deed and objected to it as a possible device to make the vendees finally pay twenty-five hundred dollars, the consideration named in the deed, for the land, but her fears were quieted by the assurance of McKnight and the notary public that that sum was put in as the consideration only to make the land sell for a higher price should they want to sell it thereafter. And granted that the plaintiff had a perfect title to the land, it made not the slightest difference to any of the parties what sum was named in the deed as the consideration, except possibly to the vendees should they wish to re-sell.

As between the parties before the court, there is no cause of action or moral wrong, either plead or proved; nor even against McKnight, so far as his transactions with the other defendants are concerned. With his subsequent embezzlement of the proceeds of this sale by the attorney they had nothing to do. The plaintiff alone, of the parties, had trusted him, and the consequences of such misplaced confidence must fall solely on him.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.