## CORNELIUS v. MARRS.
### No. 4010.

Court of Civil Appeals of Texas. Amarillo.
April 19, 1933.

Reeder & Reeder, of Amarillo, for appellant.

Clayton & Bralley, of Amarillo, for appellee.

HALL, Chief Justice.

This is a suit by Cornelius against Marrs upon a promissory note in the sum of $150. There is practically no controversy as to the facts. No question was made as to the sufficiency of the pleadings. The case originated in the justice court.

Briefly stated, the facts are that one L. A. Foster (who has since died) was, on October 30, 1930, indebted to Cornelius in the sum of approximately $30. He presented a note to Cornelius which he had signed as principal, and which Lon D. Marrs had signed as "security." The name of the payee in the note was left blank. Foster requested that Cornelius accept the note, deduct the amount of his indebtedness, and advance the balance in cash. Cornelius agreed to do so, and Foster then and there inserted the name of Cornelius as the payee in the note, which was delivered, and the overplus of about $120 was advanced to Foster by Cornelius.

When Foster brought the note to Cornelius, he also brought a letter which Marrs had written him from Kentucky and which accompanied the note in question. The letter is as follows:

"Dear Mr. Foster: Yours with note to sign received. Have executed note. Payee not named. You can insert the name. I am obligated not to sign notes to banks. Hope all will go better with you. Ex. haste.

"Sincerely yours,

"Lon D. Marrs.

"The figure 8 not good business."

Cornelius says, before accepting the note and having his name written therein, he read the letter which Marrs had written Foster, and construed it as giving Foster authority to fill any one's name in as payee except a bank. He further testified that, before the maturity of the note, and after the death of Foster, Marrs called him by telephone, asking if he had a note for $150 which he (Marrs) and Foster had signed, and during the conversation, after Cornelius had informed Marrs that he had the note, Marrs did not mention a want of authority on the part of Foster to place the name of Cornelius in the note as payee nor did he deny liability thereon; that upon maturity of the note he notified Marrs and was requested by the latter to hold the note until he could attempt to get Mrs. Foster to pay it out of the proceeds of an insurance policy payable to her on the life of her husband; that Marrs did not deny his liability on the note at that time nor did he deny the authority of Foster to insert the name of Cornelius as the payee. Marrs testified concerning a conversation he had with Foster prior to the execution of the note and in which he agreed to sign the note with Foster if the latter could induce Dr. Jordaan to take the note and make the loan. It is conceded that Cornelius had no notice of these conditions or private instructions, and the only notice of any authority on the part of Foster was expressed in the letter which Marrs wrote Foster, set out above.

A trial before the court without a jury resulted in a judgment that Cornelius take nothing; hence this appeal.

The trial judge based his judgment upon certain articles of the Negotiable Instruments Law, and held they would deny Cornelius the rights of a holder of negotiable paper acquired in due course. R. S. art. 5932, § 14; R. S. art. 5935, §§ 52, 55, and 59.

We strongly incline to the opinion that, because the evidence shows that Foster "filled up" the note "strictly in accordance with the authority given and within a reasonable time," Cornelius had the right to recover under said section 14, supra, though he was not a holder in due course under article 5935.

But, aside from this, the rights of the parties are controlled by the laws of principal and agent and of estoppel arising from the acts of an agent when performed under the express authority of the principal.

The issue of implied authority on the part of an agent to fill blanks in a promissory note executed by his principal is not in the case. The letter to Foster calls attention to the fact that the payee is not named in the note, and expressly authorizes him to insert a payee's name; the only limitation upon this authority is that the name of a bank should not be inserted as payee. No more definite or binding instructions could be issued by a principal to his agent. Foster has not exceeded the express authority given him, and was not acting under any apparent authority, nor did Cornelius rely on any implied authority of Foster. The private instructions with reference to Dr. Jordaan which Marrs gave his agent, but of which Cornelius had no notice, are not testimony affecting the rights of either party. The rule is that, when a principal has given his agent written instructions limiting the latter's authority, a third person dealing with the agent need not look beyond the written instrument, unless he is chargeable with notice of some subsequent limitation of the agent's authority, as expressed in the writing. 2 C. J. 565; Brown v. Frantum, 6 La. 39; Edwards v. Thomas, 66 Mo. 468; Plummer v. Buck, 16 Neb. 322, 20 N. W. 342; Read v. Abbott, 45 N. J. Law, 303; Lyle v. Addicks, 62 N. J. Eq. 123, 49 A. 1121; Auwarter v. Kroll, 79 Wash. 179, 140 P. 326; Ross v. Kenwood, 73 Wash. 131, 131 P. 649; 21 R. C. L. 908-910.

In discussing the authority of an agent, when conferred by writing, Mechem (volume

1 [2d Ed.] § 768) says: "In this, as in other cases, the intention is to be gathered from the whole instrument, whether it is made up of one piece of paper or of many, provided that the several papers are either so physically attached, or so connected by reference or so obviously relating to the same subject that they must be read together. However much the agent might be bound by them, a third party dealing with the agent in good faith and in the exercise of reasonable prudence in reliance upon an apparently complete document could not be bound by limitation contained in other writings of which he had no notice."

Id. § 775: "It is also a familiar rule that in the absence of fraud or mistake, parol evidence cannot be admitted for the purpose of varying or contradicting the written instrument. \* \* \* So also secret reservations, qualifications or conditions cannot be set up to affect apparently unlimited powers conferred by the instrument."

■■ Before we could apply article 5935 of the Negotiable Instruments Law, we would have to declare the written authority Marrs gave Foster to be void. This cannot be done. The letter is clear and explicit in its terms, and must be construed to be valid. Cornelius had the right to rely upon the letter, and Marrs is now estopped from pleading non est factum or a violation of secret directions given his agent and of which Cornelius had no notice.

The judgment is reversed and is here rendered in favor of Cornelius against Marrs for the full amount in controversy, together with all costs.