## ROBERT W. LYLE

*v.*

## J. EDWARD ADDICKS.

[Filed August 23d, 1901.]

Complainant and defendant, by agreement in writing, agreed, *inter alia*, (1) that defendant, on the conveyance to a company which he was to organize, of the assets of an insolvent corporation, which defendant had offered to purchase, would give complainant three notes of the new company, payable one, two and three years from date, to be endorsed by A, B and defendant in the order named; and (2) that he would execute a general release to complainant of all claims and demands. Complainant, on his part, in consideration of the fulfillment of defendant's agreement, agreed (1) to give a release to defendant from all claims against the company or defendant, except on the notes; (2) to purchase and assign to

defendant, claims of two other named creditors against the insolvent corporation; (3) to assign all complainant's shares (three hundred and ninety-six) in the insolvent corporation, and (4) to give his services in bringing about reorganization. Complainant did give these services. Defendant refused to perform the agreement.—*Held*, (1) defendant's claim that the agent who executed the agreement on his behalf had no authority to do so, not sustained upon the evidence; (2) equitable jurisdiction exists for the specific performance of the defendant's contract to purchase the shares and claims and also of the agreement for general release, and inasmuch as the consideration for the defendant's contract is entire and must be wholly performed on the part of the complainant, jurisdiction to do full and complete justice, on the whole contract, exists, and damages for the refusal to give the notes may be given in connection with decree for specific performance.

Heard on bill, answer, replication and proofs.

*Mr. Otto Crouse,* for the complainant.

*Mr. Sherrerd Depue,* for the defendant.

EMERY, V. C.

This is a bill for the specific performance of a written contract alleged to have been made by the defendant for the purchase of debts or claims held by complainant and others against an insolvent corporation, the purchase of shares of stock of this corporation and for the execution of a general release of claims held by defendant against complainant.

The affairs of the insolvent corporation, the Staten Island Terra Cotta Company, were in the course of settlement in insolvency proceedings pending in this court, the defendant being one of the two receivers. The defendant was also the holder of the majority of the stock and of the mortgage bonds of the company and was its largest creditor, his claims amounting to nearly ninety per cent. of the whole indebtedness.

Complainant, who had been connected with defendant in the management of the company previous to the insolvency, held three hundred and ninety-six shares of the stock and had proved a claim against the company for over $30,000. Defendant desired to bring about a settlement of the company's affairs by means of a purchase of its assets by himself and their subsequent transfer to a company to be organized by himself or under his

Lyle *v.* Addicks.

control, and defendant proposed to submit to the court an offer for such purchase. Defendant desired complainant's services in bringing about this reorganization, and the agreement in question purported to be made for the purpose of securing these services of complainant and for the settling of all demands of either party against the other by general releases to be executed and delivered upon both sides. The agreement, dated June 14th, 1897, after reciting this desire of the defendant, as the majority stockholder and bondholder of the company and its largest creditor, to effect this reorganization, and his intention to make the offer to the court and his desire to have complainant's assistance in the reorganization, provides on defendant's part (1) that he will make the offer within twenty days; (2) that if the offer is accepted he will cause a corporation to be formed forthwith, to which the property and assets in the hands of the receivers will be transferred; (3) that on the consummation of the purchase and transfer, defendant will cause three notes of the new company to be given, payable to complainant's order for $5,000 each, dated on the day of the transfer and payable, respectively, one, two and three years from the date of the transfer, and endorsed by John V. Bacot, Geo. L. Record and defendant, in the order named, with interest from date; and (4) that at the time of giving the notes defendant will execute a proper instrument releasing complainant from any and all claims or demands which he may have against him.

Following this recital and the defendant's agreements, the complainant on his part, "in consideration of the premises and upon the fulfillment of the promises and agreements made by the party of the first part," agreed (1) to execute and deliver to the defendant a release from all claims (except on the notes of the new company) which complainant may have against the said company or defendant; (2) to purchase and assign to the defendant the claims of William Lyle and of Frederick Haffe against the Terra Cotta Lumber Company; (3) to sell, assign and transfer to defendant all his stock of the company, amounting to about three hundred and ninety-six shares; and (4) to give his services in bringing about a reorganization. The agreement, which was under seal, was signed by the complainant, and

upon defendant's part, in his name, by Asa W. Dickinson, as his attorney in fact. The answer denies the authority of Mr. Dickinson to sign the agreement, and the first question to be decided is one of fact, whether the defendant authorized Mr. Dickinson to sign it as his attorney.

Without going into details, I will merely state that my conclusion, reached upon the oral examination before me and confirmed upon reading over and again considering the evidence bearing upon the issue, is that the complainant has satisfactorily made out, by the clear weight of evidence, that the agreement was signed by Mr. Dickinson as defendant's attorney and by virtue of express previous authority given to him by defendant. The authority was given by a letter signed by defendant, which was, according to the evidence of three credible witnesses, produced at the time of the execution of the agreement, and from the terms of which it was substantially drawn, except in the respect that the provision for "interest from date" on the notes was not contained in the letter. As to this, the understanding between the parties was that the letter did not contain express authority to add the interest clause, and that if the defendant repudiated this part of the agreement, complainant would not insist upon it. Defendant, according to his own statement, was, within a week, informed by Mr. Dickinson of the execution of the agreement, and while he now says that he then told Mr. Dickinson, that he (Dickinson) had no authority to sign an agreement for a general release, he did not then, or at any time previous to the hearing in this cause, specially object to the provision relating to interest, nor is any objection on that account made in the answer in the cause. Defendant's objections made, as he says, within a week to Mr. Dickinson, appear to have been confined to his authority to execute an agreement for a general release. There does not appear to have been any direction by defendant to Mr. Dickinson to notify complainant of any objection, and no objection to the release was communicated or made, either by defendant or Mr. Dickinson, to the complainant or anyone on his behalf. In the meantime defendant made his offer for purchase on the terms stipulated. A hearing of the creditors upon the proposal took place in July, 1897, and complainant, on his own behalf, and by his influence with other

Lyle *v.* Addicks.

creditors, gave his services to securing the acceptance of the offer. The court, upon the hearing, accepted defendant's offer to purchase the assets, and on September 23d, 1897, a transfer of the assets purchased by defendant of the receivers was made to the Staten Island Clay Company, the company which had been organized by defendant for the purpose. Complainant, after this transfer, tendered himself ready to carry out the agreement on his part by the execution of the general release to defendant, and the transfer of the claim and stocks, and still tenders these. Defendant refused to carry out the agreement and sets up in his answer Dickinson's want of authority to sign the agreement, or to sign a general release.

As above stated, my conclusion upon the evidence is, that, with the exception of the clause relating to interest, Mr. Dickinson had previous express written authority from defendant to execute the agreement, and both, as to this special clause, as to interest, as well as to the entire agreement, as signed, my conclusion is that defendant's failure, upon his being informed within a few days by Mr. Dickinson of the execution of the agreement, to notify defendant of his repudiation, either of the entire agreement or of the interest clause, and his keeping silent upon this objection to the agreement on the score of want of authority, while action on his offer was pending, and while complainant was, to his knowledge, acting on the belief of the validity of the agreement, amounted to a sufficient subsequent ratification of the authority to sign the agreement. Defendant having obtained the benefit of the complainant's services, in relation to the acceptance of the offer, rendered under a belief that the agreement was executed with authority, is now estopped from repudiating it. It does not appear in the case that any services, other than those relating to the acceptance of defendant's offer, were contemplated.

Assuming that the agreement, as signed, is held to be the agreement of defendant, other defences to the bill for specific performance of the contracts are relied on. First, it is urged that inasmuch as the notes to be given were those of a third person not party to the contract, and inasmuch as they were also to be endorsed by third persons, not parties, the defendant has no control over the giving of these notes and the contract cannot

be specifically enforced. If the contract to be performed related solely to the notes this objection might have some weight and the remedy at law might be adequate. But the contract covered also the execution of a general release, the purchase of debts and of shares of stock, as to which complainant's only adequate relief is in equity. The jurisdiction of the court in this case is based on two circumstances—*first,* that the complainant is, under the principles settled by our decisions, entitled to specific performance of the contract for release and for the purchase of the debts and stock (*Culting* v. *Dana, 10 C. E. Gr. 265, 270, Chancellor Runyon, 1874*) ; and *second,* that the contract is one entire contract in which the acts to be performed by complainant, as the foundation for his claim to the release and to the notes, and also as a consideration for the sale of the debts and stock must, by the terms of the contract, all be performed by complainant before or at the time when the release, as well as the notes, are to be delivered. As a condition precedent to, or concurrent with, the delivery of defendant's release and of the notes to him, complainant must, on his part, deliver his release to the defendant, and his assignment of the debts and claims. Complainant cannot be required to tender these for the release alone or until the notes as well as the release are given, and the complainant, upon this tender of the release and assignments, on his part, is therefore entitled to a settlement of his entire rights under the contract. Such settlement of the rights, where the contract and the consideration are entire, must necessarily be made in one action and by one court, either in a court of law by damages for the breach of the entire contract, or in a court of equity by specific performance of those parts of the contract, to the performance of which complainant is entitled, and which defendant can perform, with compensation in damages, for the breach of that portion of the contract which cannot be performed. The compensation, in damages, for a breach of a portion of the contract, together with specific performance of the other portions of the contract, is necessary, because the consideration for all portions of the contract on defendant's part is entire on the part of the complainant, and specific performance of any portion of the contract cannot equitably be decreed unless complainant on his part performs

Lyle v. Addicks.

all. This court, therefore, having a clear jurisdiction for the purpose of specific performance of the contract for release and for the purchase of the claims and stock, must retain the suit for all purposes, for the purpose of doing complete justice, and will to this end assess the damages to be paid by way of compensation for so much of the contract as defendant may not be able to perform. The equitable jurisdiction, based on the necessity of doing full and complete justice in a single suit, is thoroughly established and scarcely requires a reference to authorities. *Pom. Spec. Perf.* ¶¶ *436, 474; Story Eq. Jur.* ¶¶ *794, 796, 798; Dunn* v. *Hastings, 9 Dick. Ch. Rep. 503.* The situation would be different if the only part of the contract to be performed was that relating to the delivery of the notes, and it was known to complainant, before the bringing of the suit, that the defendant could not perform this contract. See cases cited in *Borden* v. *Curtis, 3 Dick. Ch. Rep. 120 et seq.* In reference, therefore, to the part of the contracts relating to giving of the notes, complainant would, if the time of payment limited had not expired, have been entitled to a decree that the notes be given within a time to be fixed, or, on failure to do so, that the defendant pay to the complainant the face value of the notes, with interest. At the time of filing the bill, the time for payment of the first note had not expired, but at the time when the cause was submitted, the time fixed for the payment of the second note had passed and the time for payment of all the notes has now expired. The complainant is therefore entitled, in my judgment, to damages for the non-performance of this part of the contract, in connection with a decree for specific performance of the portion of the contract relating to the release and the purchase of the claims and stock. Defendant insists that no decree to perform this contract as to the notes or for damages for its non-performance should be made, as the company had no authority to give a note for this purpose. But inasmuch as the payment of the complainant by notes of the new company was arranged by the defendant as part of the consideration or expense to himself of the purchase of the assets to be conveyed to the new company, provisions for the repayment of this part of the expense to the defendant by the new company

was entirely within the power of the latter in settling the consideration for the purchase. Defendant thus had it in his power to make the notes valid beyond question, as against the new company; even if his failure to make such a provision would render the notes now illegal (as to which I express no opinion), this failure of the defendant cannot operate to relieve him of the obligation of the contract.

It is also insisted that the defendant cannot procure, and could not at the time of the bill have procured, the endorsement of Bacot and Record. But it appears, from the evidence, that at the time of the agreement defendant had arranged with them for their endorsements, and having by his contract with complainant stipulated unconditionally for their endorsement, he cannot now be relieved from the obligation of the contract. The last defence to be noticed is that of the alleged inequity in requiring a general release, it being insisted that defendant had claims against complainant amounting to over $125,000. But it also appears that these claims were disputed, that the $125,000 claim was upon notes on which defendant was an endorser prior to complainant, and therefore, *prima facie,* at least first liable, and that defendant had been advised that he could not recover upon the claim. Inasmuch as defendant, upon his side, also stipulated for and will receive a general release, and as the agreement seems to have been based on the idea of an entire and complete settlement to date between the parties, and a concert of action for the future, in relation to the adjustment of the affairs of the insolvent corporation, out of which all the existing disputes between the parties had arisen, it cannot be said that the agreement for a general release is unconscionable or unreasonable, even if the question of reasonableness was an open one and at issue in the cause. For as bearing upon the defendant's present right to raise this question, it should be observed that the contract is under seal, and thus imports a sufficient consideration, and that the evidence shows that the provision for general release was expressly stipulated for.

I will advise a decree for the delivery of the release and the payment of the amount of the notes, upon complainant's tendering on his part a release and the assignments of the claims and stock.