(January 22, 1902.)

## LANE v. PACIFIC AND IDAHO NORTHERN RAILWAY COMPANY.

### [67 Pac. 656.]

CONTRACT — SPECIFIC PERFORMANCE — RAILWAY COMPANY—BUILDING SWITCH.—Where a contract under which a railway company enters and obtains a right of way provides that it shall place its fences at the edge of the pit ground, on both sides of its track, and that it shall construct a switch or sidetrack on the land granted for the right of way, specific performance will be decreed, and cannot be defeated on the ground that it is impracticable to compel specific performance.

CONTRACT — IMPLIED PROMISE — ACCEPTANCE — ESTOPPEL.—Where a party to contract accepts it, acts under it, and obtains all of the benefits that were intended to be granted by it, he is estopped

from objecting to the same on the ground that he did not sign it, as the law implies a promise on his part to perform the conditions of such contract from his act of accepting it.

IMPLICATION FROM PROMISE TO DO A THING.—Where a party agrees to do a certain thing, and does not specify how it shall be done, the law implies a promise on his part to do it in the usual manner, and that it shall be complete and effectual for the use to which the same kind of thing is generally applied.

ALTERATION OF CONTRACT—EFFECT ON INNOCENT PARTY.—The alteration of a contract by adding words thereto without the knowledge or consent of the obligor, after its delivery, while ground for rescission at the option of the obligor, does not affect its rights, and he may have the contract enforced as originally made by him. (Syllabus by the court.)

APPEAL from District Court, Washington County.

Frank Harris and Lot L. Feltham, for Appellants.

This is an action to compel specific performance of a contract for right of way for a railroad. The defendant could not challenge the validity of the instrument upon which this suit was brought as it had received in full all the benefits specified thereunder. "A party is estopped from denying the validity of an instrument by virtue of which alone he has obtained possession of property, which he still holds." (Biglow on Estoppel, 684, 685; *Denison v. Willcut* (Idaho), 35 Pac. 699.) A railway must make compensation for right of way across possessory claims. (*Spokane Falls etc. Ry. Co. v. Zeigler,* 167 U. S. 65, 17 Sup. Ct. Rep. 728.) A complaint is not demurrable on the score of want of facts, if upon the facts stated the plaintiff is entitled to any relief, either at law or in equity. (*Grain v. Aldrich,* 38 Cal. 514, 99 Am. Dec. 423; *White v. Lyons,* 42 Cal. 279; *Hulsman v. Todd,* 96 Cal. 228, 31 Pac. 40.) To take a contract for the sale of lands out of the statute of frauds a mere note or memorandum in writing, subscribed by the vendor or his agent, containing the names of the parties and a summary statement of the terms of the sale, either expressly or by reference to something else, is all that is required. (Idaho Rev. Stats., sec. 6009; *Joseph v. Holt,* 37 Cal. 254; *Ide v. Leister,* 10 Mont. 5, 24 Am. St. Rep. 17, 24 Pac. 695.) "An ex-

ecutory contract for the sale of real estate is valid and binding, and can be enforced by the vendee if signed by the vendor alone." (*Cavanaugh v. Casselman,* 88 Cal. 543, 26 Pac. 517.) And the rule is not changed even though the vendor be a married woman, for she may enforce a contract for the sale of real estate. (*Banbury v. Arnold,* 91 Cal. 606, 27 Pac. 936.)

J. H. Richards, for Respondent.

To entitle appellants to a specific performance of said contract, there must be such certainty in the allegations as to time when the contract is to be performed, the manner in which the same is to be performed, the extent to which the contract is to be performed, and the certainty as to what is to be done under the contract, as to enable a court to render a decree possible to be performed without making a new contract for the parties. (*Agard v. Valencia,* 39 Cal. 292, 302; *Gates v. Gamble,* 53 Mich. 181, 18 N. W. 631; *South Wales Ry. Co. v. Wythes,* 5 De Gex, M. & G. 880; *Minturn v. Baylis,* 33 Cal. 129; *Magee v. McManus,* 70 Cal. 553, 12 Pac. 451.) Respondent contends that a contract may be declared *in haec verba* or according to its legal effect. When declared *in haec verba* the instrument incorporated in the complaint must show, upon its face, in direct terms and not by implication, all the facts which the pleader would have to allege had he elected to set it forth by averment. (*More v. Elmore Co. Irr. Co.,* 3 Idaho, 729, 35 Pac. 171; *New Orleans v. New Orleans etc. R. Co.,* 44 La. Ann. 64, 10 South. 401; *Shenandoah Valley R. Co. v. Lewis,* 76 Va. 833; *Colson v. Thompson,* 2 Wheat. 336; 1 Story's Equity Jurisprudence, secs. 764, 767; Fry on Specific Performance, sec. 229.) Equity will not ordinarily enforce specific performance of a covenant by a grantee to build on the premises conveyed, since damages at law for breach of the covenant are generally an adequate remedy, and the court has no power to compel performance of such condition. (*Madison v. Brittin,* 60 N. J. Eq. 160, 46 Atl. 652; *Haisten v. Savannah etc. R. Co.,* 51 Ga. 199; *Eaton v. Lexington etc. R. Co.,* 22 Ky. App. 1133, 59 S. W. 864; *Goding v. Bangor,* 94 Me. 542, 48 Atl. 114.) The rule is almost universal that a covenant to build may not

be enforced specifically, for the execution of such contract would be impracticable, if not impossible, for a court to supervise, whereas the remedy of damages would afford full redress, and this is especially true of covenants to construct or repair railways. (*Oregonian R. Co. v. Oregon R. etc. Co.,* 11 Saw. 33, 28 Fed. 346; *Port Clinton R. Co. v. Cleveland etc. R. Co.,* 13 Ohio St. 544; *Fallon v. Railroad Co.,* 1 Dill. (U. S.) 121, Fed. Cas. No. 4629; *Ross v. Union Pac. R. Co.,* 1 Woolw. 26, Fed. Cas. No. 12,080; *Railway Co. v. Rust,* 17 Fed. 275, 282; *Center v. Davis,* 48 Cal. 453; *Sumers v. Bean,* 13 Gratt. (Va.) 404; *Angus v. Robinson,* 32 Vt. 60; 20 Ency. of Pl. & Pr. 438; *Jacobs v. Peterborough etc. R. Co.,* 8 Cush. 223.)

QUARLES, C. J.—This action was commenced in the court below to obtain a decree for the specific performance of those covenants in the contract hereinafter set forth, relating to the construction of a siding, and the place where the fence of the defendant corporation shall be erected upon its line of way. Said contract is set forth, in effect, in the complaint, and attached to said complaint as a part thereof, and is in words and figures as follows, to wit:

"May 11, 1899.

"This agreement, made and entered into by and between J. W. Lane and Victoria Lane, his wife, of Weiser river, Washington county, Idaho, the parties of the first part, and the Pacific and Idaho Northern Railway Company, a corporation of Idaho, the party of the second part, witnesseth, that the said parties of the first part, for and in consideration of the sum of three hundred and seventy-five dollars, the receipt whereof is hereby acknowledged, do hereby agree to sell and quitclaim, and do hereby sell and quitclaim, forever, all our right, title, and interest to second party herein in a strip or piece of land one hundred feet wide, and being fifty feet wide on each side of the center line of the survey now made and staked through all of our land (being unsurveyed government land) lying and being on the Weiser river, and being part of the premises on which we now live, and upon which we have lived for the last eight years, and hereby give said second party, its agents and

employees, the right to enter upon said land at any time for the purpose of building, constructing, and operating its said railway upon, through, and across said premises where said survey is now made. Said second party further agrees to make for first parties an underground crossing fourteen feet wide, and as high as the grade of said road will permit. Said culvert or crossing is to be made where first parties desire, at or near where first parties cross the Weiser river with wagons, buggies, etc., and near their present dwelling-house, and on bank of said river. Said second party further agrees to put up, build, and construct for first parties another underground crossing eight feet wide, and as high as the grade of the road will permit, at another place upon said ranch where first parties may desire. Also to put in a wooden culvert or box at least three feet square at any place where the first parties may desire, under and across the breem of said road, for first parties' hogs to cross under and through to the river and back to the pasture. Also, second party agrees to build a switch or sidetrack on said ranch at or near the dwelling of said first parties, and agree to build sufficient sized wooden flumes under their said track to carry the water used for irrigation purposes at and where all laterals cross second party's right of way on said ranch. First party is to have the right to farm and use any and all of said second party's right of way not fenced and actually in use by second party, and second party is to build its fence on the edge of the pit ground through said ranch, and, in fencing, to fence no more of said right of way than is absolutely necessary to protect its road and the banks and fills made in constructing same; and first parties are to have the use of all of the lands of second party not so fenced, for his crops, etc., free of charge, until such times as it is necessary for second party to fence and use same. The agreements and stipulations herein are to be no way construed as to give second party any rights, claims, or possession of any irrigation ditches or ditches northerly or outside of any inclosure; and if any ditch or ditches, flumes or laterals, are crossed or in any manner interfered with, outside of any inclosure, then any and all damages sustained by first parties is to be settled and paid for

by second parties entirely outside of this contract, the same as if no contract of any kind had ever been made. First party further agrees to give second party all ground necessary for switch purposes, if said switch is located at or near his dwelling, and on his house place.                    "J. W. LANE,

                                        "VICTORIA LANE,

"JNO. W. AYERS,
        "Witness."

The complaint alleges that the plaintiffs have resided upon said land ever since May, 1890; that plaintiffs are citizens of the United States, and that they have so lived upon said lands with the intent and purpose of entering the same under the homestead and desert land laws of the general government; that said contract was accepted by the defendant company, and that said defendant has entered upon said lands, constructed its railway across and over same, and has ever since used and enjoyed said right of way and privileges granted to it by the terms of said contract; that the plaintiffs have done and performed on their part all and every of the obligations and stipulations of said contract by them agreed to be done and performed, and that said plaintiffs did tender to said defendant on the ninth day of May, 1901, a good and sufficient quitclaim deed, duly executed and acknowledged by plaintiffs, which deed the said defendant refused to accept; that the defendant has failed to comply with the covenants and stipulations of said contract in the following particulars, to wit: It has failed and refused to build a switch or sidetrack on the said lands of the plaintiffs, although requested by plaintiffs so to do, and has failed and refused to place its fences on the edge of the pit ground through the edge of said lands, and has failed and refused to give plaintiffs the use of said right of way outside of said pit ground, although requested so to do, but has, over the objections and protests of the plaintiffs, constructed its fences on each side of the track fifty feet from the center of its track, and thirteen feet farther from the center of said track than the edge of the pit ground, and that much farther than is necessary to protect said track, roadbed, banks, and fills made in constructing the same, and so maintains said fences, depriving plaintiffs of a strip of land on each side of the track thirteen

feet wide and one mile long; and that said land is valuable for the growing of crops. The complaint also alleges that, after the delivery of said contract to the defendant, the words "if convenient" were interpolated into same after the words "and second party is to build its fence on the edge of the pit ground through said ranch," without the knowledge or consent of the plaintiffs. The prayer is that the words "if convenient" be stricken from said contract, and that defendant be required by decree of the court to place its fences along the edge of its pit ground, and to construct and build a switch or sidetrack on the said lands of plaintiffs, and for general relief. To the said complaint the defendant filed the following demurrer, to wit: "Comes now the above-named defendant by its attorney, J. H. Richards, and demurs to the third amended complaint of plaintiffs filed herein, and for cause of such demurrer says: 1. That said complaint does not state facts sufficient to constitute a cause of action; 2. That said complaint does not state facts sufficient to entitle the plaintiffs to the relief demanded in said complaint, or any relief; 3. That said complaint does not state facts sufficient to entitle the plaintiff to the reformation of the alleged contract; 4. That said complaint does not state facts sufficient to the relief demanded in said complaint, in this: That defendant be required to build a switch or sidetrack to the alleged railway on the land described in said complaint, at or near the dwelling-house of plaintiffs or elsewhere; 5. That said complaint does not state facts sufficient to entitle the plaintiffs to the relief demanded in said complaint, to wit, that defendant be required to place its alleged side fence on the edge of the alleged pit ground through said described land, or elsewhere; 6. That said complaint does not state facts sufficient to entitle plaintiffs to the relief demanded in said complaint, in this: That plaintiff have the use of all or any of said right of way not fenced, as alleged, for the purpose of raising crops, free of charge, or otherwise, at any time." The court sustained said demurrer, and entered judgment of dismissal in favor of defendant, from which plaintiffs appeal.

We think that the court below erred in sustaining said demurrer. The complaint stated a cause of action. The allegations of the complaint, for the purposes of the demurrer, are

taken as true. The contract was accepted by the defendant. It was fair on its face, equitable, reasonably certain, supported by a valuable consideration, contained mutual obligations, was executed by plaintiffs, and partly executed by the defendant, who acquired all of the benefits intended to be granted to it by said contract. It is apparent from the contract itself that one of the controlling considerations for the execution of said contract was the agreement or stipulation relating to the placing of defendant's fences on both sides of its track at the edge of the pit ground, and the building of the switch or sidetrack on the lands of the plaintiffs. Now, having received the benefits of the said contract, the defendant, in equity, is required to bear the burdens thereof. It is apparent that no measure of damages can be found whereby the damages accruing to the plaintiffs by the failure of the defendant to comply with the contract in the particulars named can be ascertained with certainty. Analogous cases involving the same principle are numerous, but cases where the facts are the same as those in the case at bar probably cannot be found. Mr. Fry, in his admirable work upon Specific Performance of Contracts, third American edition, at section 81, says: "Thus the court has in numerous cases enforced on railway companies contracts to make and maintain works for the convenience of the lands of the plaintiff. It has done this in cases in which the terms of the contract have been general and difficult to execute." And at section 82 the same author says: "In one of these cases a contract by the company to construct and maintain, upon land belonging to, and to be provided by, a land owner, a siding of specified length alongside the line, was held capable of specific performance; and the company were not allowed to resist performance on the ground that the plaintiff had, before filing his bill, entered into a negotiation (which failed) for a money compensation." At section 83 the same author, in speaking of the decision in *Price v. Mayor etc. of Penzance,* 4 Hare, 506, says that "Wigram, V. C., observed that, the defendants having had the benefits of the contract in specie, the court would go any length that it could to compel them to perform their

contract in specie." The learned author cites a number of English cases as supporting the text. It is true that the contract does not specify the length of the switch or sidetrack. In our view, that is not necessary. It is a well-established rule that where a party agrees to do a certain thing, and does not specify how it shall be done, the law implies a promise on his part to do it in the usual manner, and that it shall be complete and effectual for the use to which the same kind of thing is generally applied. The contract contemplated a sidetrack or switch capable of being used for the loading or unloading of cars as the same is usually done at country sidings. As to its length, that is a matter largely within the pleasure of the defendant; but it undertook to construct a sidetrack or switch upon the land furnished by plaintiffs, and that it must do, if plaintiffs establish their case as pleaded in the complaint, in such way that the same may be used in the manner and for the purposes for which switches are ordinarily used.

It is argued by the respondent that the demurrer was properly sustained for the reason that the complaint shows that the contract was not executed by the defendant corporation. It was not signed by any agent or officer of the corporation for it, but that was not necessary. By accepting the contract, acting under it, and obtaining its benefits, the defendant impliedly agreed to comply with the covenants thereof. In a note to *Woodruff v. Woodruff,* 44 N. J. Eq. 349, 1 L. R. A. 380, 16 Atl. 4, it is said: "Where one by deed poll grants land and conveys any right, title, or interest in real estate to another, and where there is any money to be paid by the grantee to the grantor, or for his use and benefit, and the grantee accepts the deed and enters on the estate, the grantee becomes bound to make such payment or perform such duty." A number of cases have been cited by the respondent to show that courts refuse to decree specific performance of building contracts. The rule that an ordinary building contract will not be enforced by decree for specific performance is based upon several sound reasons, one of which is that, if the contractor refuses to comply with his contract, the landlord may perform the contract, and thus definitely determine the amount of damage sustained.

This reason does not apply to the case at bar, for the plaintiffs have no right to enter upon the right of way which they have granted to the defendant for the purpose of constructing improvements thereon. They cannot construct the switch, or in any manner interfere with the roadbed of the defendant. Action for specific performance is the proper remedy. The facts pleaded show that the plaintiffs have no adequate remedy at law.

It is also contended by respondent that a decree for specific performance so far as the fence is concerned would be an idle thing, as the defendant is, under the contract, the judge as to how much of the right of way is necessary to protect the cuts and fills; hence, that it may, under the contract, place its fence where it pleases on the right of way. We think the contract definitely fixes the position in which the fences shall be placed, viz., as near the edge of the pit ground on both sides of the track as possible, giving all necessary protection to the roadbed, cuts, and fills. As to whether it shall be one foot or some other distance is to be determined from the facts as they shall appear in the evidence, and may depend upon the depth of a cut or the height of a fill at a given point, and the liability of the earth to slide at given points. That distance may or may not be greater at one given point than at another. The facts showing necessity to place it beyond the edge of the pit must appear. It is not difficult for the defendant to comply with the stipulation in the contract relating to fences.

It is argued by the respondent that courts do not engage in building switches or railroads or fences, and cannot specifically enforce contracts of the kind involved in this case, and it cites the case of *Railroad Co. v. Rust* (C. C.), 17 Fed. 275, as sustaining this position. We do not think the decision named has any bearing as a precedent in the case at bar. The facts in that case are not at all like those set forth in the complaint in this action. It is true that the court will not undertake to build the switch contemplated in the said contract, but, if the facts alleged in the complaint shall be established at the trial, it will be the duty of the court to decree that the defendant

shall do so, and the power to compel compliance with such decree undoubtedly exists in the court.

The complaint alleges that, after the execution and delivery of said contract by plaintiffs to the defendant, the words "if convenient" were interpolated into it without the knowledge or consent of the plaintiffs, and asks that the contract be reformed by striking out said words. If the fact should be determined as alleged, said words should be stricken from said contract. While such alteration would be ground for rescission by the plaintiffs, if such alteration was in fact made, yet it does not affect their rights. The defendant could not add those words, and then accept it in its altered form, and bind the plaintiffs, without their knowledge or consent.

For the foregoing reasons, the judgment of dismissal is reversed, and the cause remanded to the district court, with instructions to set aside the order sustaining the demurrer, and to enter an order overruling the same, and for further proceedings. Costs of appeal awarded to the appellants.

Sullivan and Stockslager, JJ., concur.