TAYLOR, HOCKER and PARKHILL, JJ., concur in the opinion.

---

HENRIETTA W. TAYLOR, ALBERT A. TAYLOR, BLANCHE TAYLOR PECK AND SAMUEL H. PECK, HER HUS-BAND, *Appellants*, v. FLORIDA EAST COAST RAIL-WAY COMPANY, *Appellee*.

1. In a proceeding for the specific performance of a contract a temporary injunction will not be granted unless the allegations of the bill of complaint warrant a decree of specific performance, nor unless it also appears that an injunction is appropriate and just.

2. The granting or denying of a temporary injunction is largely within the discretion of the trial judge; but such discretion is controlled by established principles of equity. If the allegations of the bill are sufficient and the evidence in support thereof is ample to warrant the granting of the temporary injunction, and no sufficient defense is made, an order denying an injunction will be reversed.

3. Whether the duty a common carrier a railroad corporation owes to the public is materially and injuriously affected by the contract obligations of the corporation to individuals cannot be arbitrarily determined by the corporation for itself.

4. Where a common carrier railroad corporation asks for and receives land upon which to construct its road, and as a consideration therefor promises to maintain a spur track and depot at a certain place upon lands given for that purpose,

and the party giving the land relying upon the promise of the corporation, incurs great expense in improving his property for use in connection with the advantages of the spur track and depot and the operation of trains thereon, and the breach of the promise results in an injury that cannot be adequately compensated in damages, equity may enforce performance of the promise in the manner and to the extent agreed, at least in the absence of a proper showing of superior rights of the public.

5. A deed conveying lands to a railroad company for its right-of-way by the owner of a hotel situated near to the proposed road containing an agreement on the part of the corporation "to maintain the spur track, depot and platform, and to operate all its regular passenger trains upon said spur track to said depot during what is known as winter tourist season, which consideration is binding upon the party of the second part, its successors and assigns," taken in connection with the conditions that surround the parties and the purpose to be accomplished indicates an intention that the agreement should remain in force at least during a continuance of substantially the same mutual conditions and relations of the parties and their privies.

6. Where the owner of land conveys it to a railroad corporation for the right-of-way of its main line and the corporation violates its agreement contained in the deed of conveyance to maintain a spur track and depot on the spur track, the grantor of the land cannot enjoin the running of trains over the main line, since the public have rights requiring uninterrupted service over the main line.

7. While equity will not ordinarily decree the specific performance of contracts requiring continuous acts involving skill, judgment and technical knowledge, contracts relating to the operation of railroads may be specifically enforced.

8. While a common carrier railroad corporation may not be bound by a contract which renders the corporation incapable of performing its duties to the public, yet where the subject matter of a contract made by such a corporation is not foreign to the lawful purposes of the corporation, but is fairly within its authorized powers and purposes and the contract is not

forbidden by statute and is not otherwise illegal it will not be nullified by the courts.

9. Where a railroad company accepts a deed conveying to it land for its right-of-way and so uses the land, any valid contract or agreement contained in the deed of conveyance is binding upon the railroad company, even though the company did not sign the deed, and, under proper circumstances, such agreement may be enforced in equity by specific performance.

10. Where the owner of a hotel conveys land to a railroad company upon which to construct its right-of-way for the main line, a spur track and depot, and the deed of conveyance contains an agreement upon the part of the railroad company to maintain the spur track and depot to a point near the grantor's hotel and to operate all its regular passenger trains upon the spur track to the depot during a certain season of the year, and it appears that a controlling consideration for the conveyance was the maintenance of the spur track and depot thereon and the operation of passenger trains over the spur to the depot, which would be peculiarly beneficial to the grantor's hotel property and business, and extensive improvements of the hotel property are made upon the fact of the agreement to maintain the spur and depot and to operate the passenger trains as stated, such agreement may be specifically enforced in equity unless such enforcement will directly, materially and injuriously affect the rights of the general public. This accords with the public policy declared in chapter 4203 acts of 1893, sec. 2848 gen. stats. 1906.

11. Where a court of equity properly acquires jurisdiction of a cause to enforce specific performance of a contract, the court will proceed to administer complete justice by adjudicating all matters properly presented and involved in the case. Injunctions, both mandatory and restraining may be granted and damages may be awarded upon proper allegations and proofs when necessary to do complete justice.

This case was decided by Division A.

Appeal from the Circuit Court for Brevard County.

The facts in the case are stated in the opinion of the court.

*Cooper & Cooper,* for appellants;

*Geo. M. Robbins,* for appellee.

WHITFIELD, J.—The cause of action alleged is, in brief, that Fred F. Taylor and the appellee in 1892, entered into an agreement by which in consideration of the conveyance of certain described lands by Taylor to defendant on which to build a portion of defendant's main line, and also a designated spur track, "Y," depot and platforms, at Rockledge, Florida, and the payment by Taylor of $2,500.00 towards the erection of the track and depot, and the release of claims for damages amounting to $2,500.00 to the defendant by Taylor, the defendant agreed to construct a "Y," and a spur track from its main line to a point near where a hotel owned by Taylor was being re-constructed, to erect a depot and platform there and to maintain said spur track, depot and platforms at said point, and to operate all its regular passenger trains upon the spur track to the depot during what is known as the winter tourist season in that locality; that the defendant constructed the spur track and erected the depot; that Taylor was in possession of said land and on said understanding and agreement permitted defendant to construct its track upon the land, and to take possession thereof under said understanding and agreement; that relying upon said agreement and the great advantages to accrue therefrom and from the construction of the spur track near his hotel on Indian River then being re-constructed, said Taylor changed his plans from simply re-constructing the then existing hotel and built a large,

modern and expensive hotel building for the accommodation of tourists, and expended thereon about $65,000.00, and also purchased additional property immediately north of the hotel property and improved same at a cost of about $18,000.00; that said expenditures were made upon the reliance of Taylor on said agreement; that Taylor and wife conveyed the land to defendant, the consideration stated in the deed of conveyance being that the defendant "having constructed a spur track from the main line of its railway into Rockledge and erected a depot at the easterly end of said spur track and its agreement to maintain said spur track, depot and platform and to operate all its regular passenger trains upon said spur track to said depot during what is known as the winter tourist season which consideration is binding upon the party of the second part, its successors and assigns;" that defendant accepted the deed and the money as aforesaid, had the deed duly recorded and took and still holds possession of the land conveyed under the agreement; that after the winter of 1894 in accordance with said agreement the depot was continuously and regularly maintained at the end of the spur track near the Indian River and within 200 feet south of said hotel, and regular passenger trains of defendant operated over same to said depot and the depot maintained as stated in the agreement; that until October 16, 1906, defendant recognized its obligation to maintain said depot at the end of the spur track near the hotel and to operate its regular passenger trains during the tourist season to said depot, and up to about October 21, 1906, did so in pursuance of the terms of said agreement and said deed; that after the construction of said track and depot, Taylor completed the hotel and the same was profitably operated on account of its location on Indian River and on account of its accessibility from

said track and depot and the attractive appearance
of the hotel and grounds to tourists and travelers on ar-
riving over said track at the said depot; that on Novem-
ber 25, 1905, Fred R. Taylor died intestate leaving Hen-
rietta W. Taylor, his widow, Albert A. Taylor and
Blanche Taylor Peck, his only children, and that Hen-
rietta W. Taylor had duly elected to take a child's part
in the estate; that Fred F. Taylor died seized and pos-
sessed of the hotel property, and that said widow and
heirs have fee simple title to said property; that on Sun-
day October 21st, 1906, defendant with a work train
and with a large force of workmen tore up and removed
the spur track and portions of the depot and abandoned
same and located another depot on the main line at least
a half mile away in a most undesirable, unsuitable and
swampy locality, extremely unattractive in appearance
and unsuited for the purposes of such depot, and the ap-
pearance and view from same to travelers arriving thereat
are in all respects unattractive and repulsive; that in ad-
dition to abandoning said depot defendant removed the
telegraph office, express office and baggage rooms to the
new depot; that the removal of said depot was done
without notice to complainants, without their knowledge
or consent and in a secret and clandestine manner indi-
cating a purpose to violate the rights of complainants and
to prevent them from obtaining relief; that complainants
have demanded and defendant has refused a restoration
of said spur track and depot, and a carrying out of said
agreement and deed; that defendant retains the money,
the release for damages and the right of way given by
Taylor; that the removal of the spur track and depot
and the non-operation of the trains violates the agree-
ment, greatly injures and depreciates all of complain-
ants' said property, and particularly the value of the
hotel property and the use of the same as a hotel, and

largely increases the cost of operating the hotel because of additional transportation to and from the depot; that practically the entire stock of the defendant company is owned by the same persons who own and control the stock of another corporation that owns and operates hotels lying north and south of complainants' hotel in other cities on said line of railroad, which hotels compete with complainants' hotel, and defendant has constructed spur tracks near to the defendant's hotels, and maintains depots at the end of such spurs near its hotels for the benefit of said hotel company, thus making an unfair and unjust discrimination against complainants' hotel; that because of such acts great loss and damage have accrued to complainants; that the business of the hotel is daily being lessened and damaged because of said acts of defendant. The prayer is for a decree for specific performance of the agreement and for a restoration of the spur track and depot and the operation of the trains as agreed, and for temporary injunction and an accounting. A temporary injunction was denied and the court sustained the demurrer on the grounds of no equity and of an adequate remedy at law, and dismissed the bill. An appeal was taken by the complainants from the final decree and the orders and decree are assigned as errors.

Upon the application for a temporary injunction on bill and evidence the complainants filed several affidavits and other evidence in support of the allegations of the bill. The defendant presented a time card schedule of its passenger trains and also an affidavit of its general manager stating that defendant did not agree with Fred. F. Taylor to permanently and perpetually maintain the spur track constructed by it into the Rockledge hotels, regardless of the exigencies of its future business or the interests of the public interested in the operation of such railroad, but simply to "maintain said

41—Vol. 54

spur track, depot and platform, and to operate its regular passenger train upon said spur track to said depot during what is known as the winter tourist season," without any stipulation as to the duration of said maintenance; that said railroad company has fully complied with said contract by maintaining said spur track and operating its passenger trains on the same for the period of thirteen years, until the lengthening of its line, the increase of its business and the interests of its patrons conflict with the further maintenance thereof; that some twenty to thirty minutes have been required in the past to operate its passenger trains over said spur, and this time has been added to the schedule time of through passenger trains; that said railroad is now operating under different conditions from those which existed when said arrangement was made; that the country below Rockledge has become settled up and many more people have to be catered to below Rockledge which requires the stopping at stations not in existence at the time said spur was built; that the main line is being extended to Key West and a reasonably good passenger service now requires that the minimum time should be lost by stops at stations and that no detours from the main line shall be made; that affiant expects that in a comparatively short time the public interest will require the elimination of the operation of the spurs at Ormond and Palm Beach, except perhaps by special trains so that regular passenger trains shall not be unreasonably delayed.

In a proceeding for the specific performance of a contract a temporary injunction will not be granted unless the allegations of the bill of complaint warrant a decree of specific performance, nor unless it also appears that an injunction is appropriate and just. Knox v. Spratt, 19 Fla. 817. The granting or denying of a temporary

injunction is largely within the discretion of the trial judge; but if the allegations of the bill are sufficient and the evidence in support thereof is ample to warrant the granting of the temporary injunction, and no sufficient defense is made, an order denying an injunction will be reversed. Godwin v. Phifer, 51 Fla. 441, 41 South. Rep. 597; City of Apalachicola v. Curtis, 9 Fla. 340.

The allegations of the bill of complaint are, as shown herein, *prima facie* sufficient to warrant a decree of specific performance.

The matters set up in the affidavit offered by the defendant, if available to it, are not sufficient as a defense under the facts as they now appear. If the public interests in the service being rendered by the defendant railroad company as a common carrier would be injuriously affected by a performance of the agreement made between the railroad company and Fred. F. Taylor, or by an observance of the conditions of the deed conveying the land to the defendant, relief from the contract should be sought by the proper plaintiff in the courts.

It is the duty of a common carrier railroad corporation to have regard for the rights of the public in the service it engages to perform under the franchises the state permits it to use primarily for the benefit of the public. This requirement embraces the duty to render a service adequate to meet all the just requirements of the public, including reasonable dispatch, convenience, regularity and promptness in the transportation of passengers, provision and maintenance of adequate depot facilities suited to the business and convenience of the communities along the road, and the performance of the duties and the rendering of the service due to the public, without unjust discriminations of any character as to persons, localities or conditions. This duty, however, does not relieve the corporation from its contract obligations to individuals

when an observance of the obligations does not materially and injuriously affect the rights of the public. And where the public or any member of it is so affected, the rights of the respective parties cannot be arbitrarily determined by the corporation for itself. If the private rights under the contract cannot be adjusted by agreement resort should be had to the courts by proper parties where all rights will be adjudged. It is the duty of the corporation to observe the obligation of its contracts with individuals that are made in good faith, and that do not necessarily, directly and materially affect injuriously substantial rights of the public, until the corporation is relieved from such contracts by due course of law. The railroad company is allowed a reasonable discretion in the performance of its duties and in the rendering of service to the public; but such discretion should be exercised in good faith and for the public welfare, and not arbitrarily; and it is subject to control and regulation by governmental authority. State *ex rel.* Attorney General v. Atlantic Coast Line R. Co., 53 Fla. 650, 44 South. Rep. 213.

If the defense interposed here can avail the defendant in this proceeding, the proofs in this case do not clearly show that the substantial interests of the public are necessarily, directly and materially affected injuriously. The running of all passenger trains into the depot near the hotel was continued for years, and there is ample and undisputed testimony that the public in and around the town of Rockledge was better served by the depot near the hotel than at the new point. It does not appear that through travel on the main line of the railroad was unreasonably hindered and delayed by operating the passenger trains into the depot over the spur, or that any public authority or any part of the public has complained of inconvenience occasioned thereby, or

demanded an abandonment of the depot on the spur for the welfare or convenience of the public. It does not appear that the use of the spur and depot operated as an unjust discrimination against other localities or persons, but it is alleged that the abandonment of the spur and depot at this point operates as an unfair and unjust discrimination against the complainants' hotel, for the reason that other hotels on said railroad owned and controlled by the owners of the defendant railroad have the advantage of depots on spur tracks to such hotels; and there is uncontradicted evidence that the local public at the town of Rockledge was well accommodated by the depot on the spur there, and that the same public is less conveniently accommodated by the depot at the new point. On the showing made it appears that the public was better served by the depot on the spur near the hotel.

The defendant appears to have asked for and received in kind the property and advantages from the complainants under the contract and promised in consideration thereof to perform its stated undertakings. Relying upon the promise of defendant, Taylor incurred great expenditures and is damaged by the defendant's breach in a way that cannot be adequately compensated in damages. Under the facts alleged it is prima facie equitable that the complainants should have the benefit of a performance by the defendant of the agreement on its part in the manner and to the extent agreed on, at least in the absence of a proper showing of superior rights of the public against the corporation as a common carrier.

The contention that the contract of the defendant with the complainants had been fully performed cannot be sustained. The agreement and consideration for the deed was "to maintain said spur track, depot and platform, and to operate all its regular passenger trains upon said spur tracks to said depot during what is known as

the winter tourist season, which consideration is binding upon the party of the second part, its successors and assigns." This language, the conditions that surrounded the parties and the pur- pose to be accomplished by the agreement indicate an intention that the agreement should remain in force at least during a continuance of substantially the same mutual conditions and relations of the parties and their privies. The officers of the defendant repeatedly recognized in writing the obligation of the agreement as a continuing one for the benefit of the complainants' hotel business, which in great measure depended upon the agreed service by the defendant for successful opera- tion. If the enforcement of the agreement injuriously .affects the material rights of the general public the relief sought herein should be denied.

The prayer for an injunction to restrain the defendant from running its trains over the portion of its main line built on the land conveyed to the defendant by the com- plainant should be denied in view of the rights of the public to transportation service over the main line of the railroad. See Pensacola & A. R. R. Co., v. Jackson, 21 Fla. 146.

The grounds of the demurrer to the bill of complaint are: (1) No equity; (2) adequate remedy at law; (3) full performance of the contract by the defendant.

The granting or denial of equitable relief for the spe- cific performance of a contract rests within the sound judicial discretion of the court, and such discretion is controlled by the established principles of equity appli- cable to the facts of each case. See Asia v. Hiser, 38 Fla. 71, 20 South. Rep. 796; 20 Ency. Pl. & Pr. 389 et seq; 3 Page on Contracts, § 1624 et seq.

Courts of equity will not enforce the specific per- formance of a contract where the remedy at law by ac-

tion for damages or otherwise affords a complete and adequate remedy; but where the injury is peculiar in its nature and a jury cannot estimate with any degree of certainty the damages sustained, and no other adequate remedy is afforded at law, specific performance will be enforced by a court of equity where the necessary facts are alleged and proven.

While equity will not ordinarily decree the specific performance of contracts requiring continuous acts involving skill, judgment and technical knowledge, contracts relating to the operation of railroads have been specifically enforced in a number of cases. Where a railroad company in consideration of the conveyance to it of land, makes a reasonable agreement to perform in return for such conveyance certain service that is fairly within its corporate powers and purposes and that is not essentially inconsistent with the company's duty to the general public, such agreement, if not otherwise illegal or unenforcible, will be specifically enforced in equity upon proper allegations and proofs. See 6 Pomeroy's Eq. Jur. §761; Union Pac. R. Co. v. Chicago, R. I. & P. Co., 163 U. S. 564, 16 Sup. Ct. Rep. 1173, S. C. 2 C. C. A. 174, 51 Fed. Rep. 309, 47 Fed. Rep. 15; Schmidtz v. Louisville & N. R. Co., 101 Ky. 441, 41 S. W. Rep. 1015, S. C. 38 L. R. A. 809; Joy v. St. Louis, 138 U. S. 1, 11 Sup. Ct. Rep. 243; Prospect Park & C. I. R. Co. v. Coney Island & B. R. Co., 144 N. Y. 152, 39 N. E. Rep. 17; Hood v. North Eastern Ry. Co., 8 L. R. Eq. Cases 666; Murray v. Northwestern R. Co., 64 S. C. 520, 42 S. E. Rep. 617; Lawrence v. Saratoga Lake R. Co., 36 Hun. 467; 2 Current Law 1682.

The bill of complaint alleges in direct terms an agreement between Fred. F. Taylor and defendant, under which Taylor was to convey to defendant particular lands

at Rockledge needed for right of way for a portion of the main line and for a designated spur track and depot purposes for a railroad company, to pay defendant $2,-500.00 towards building specified side track and depot on the land, and to release a claim of $2,500.00 for damages against defendant; and defendant was to construct its spur track and depot to a point near to complainants' hotel, and on the land conveyed as agreed upon, and to maintain the spur and depot and to operate all of its regular passenger trains upon said spur track to the depot near plaintiffs' hotel during the winter tourist season.    The consideration on the part of the defendant as to maintaining the spur and depot and operating the trains was stated in the deed conveying the land to defendant corporation to be "binding upon the party of the second part, its successors and assigns." It is also alleged that the designated land was duly conveyed, possession given to and taken by defendant and title thereto duly recorded; that the track and depot was constructed as agreed and trains operated thereon as agreed until October, 1906, when the spur track and depot were on Sunday secretly taken away and the depot removed without complainants' knowledge or consent to an inaccessible and unsuitable point a half mile away to the great and peculiar damage of complainants whose hotel property had been enlarged and greatly improved at large expense in reliance upon the agreement that the spur track and depot would be maintained and the trains operated thereon to the convenient and attractive depot near complainants' hotel as agreed.

When the grantee accepts a deed and enters into possession of the land conveyed, he is deemed by such acts to have expressly agreed to do what is stipulated in the deed he should do, even though he did not sign the deed. Silver Springs, O. & G. R. Co. v. VanNess, 45 Fla. 559, 34 South. Rep. 884.

Where a railroad company accepts a deed conveying to it land for its track and so uses the land, any valid contract or agreement contained in the deed of conveyance is binding upon the railroad company, and, under proper circumstances, such agreement may be enforced in equity by specific performance. See Post. v. West Shore R. Co., 123 N. Y. 580, 26 N. E. Rep. 7.

While a common carrier railroad corporation may not be bound by a contract which renders the corporation incapable of performing its duties to the public, yet where the subject-matter of a contract made by such a corporation is not foreign to the lawful purposes of the corporation, but is fairly within its authorized powers and purposes and the contract is not forbidden by statute and is not otherwise illegal it will not be nullified by the courts. See Union Pac. R. Co. v. Chicago, M. & St. P. R. Co., 163 U. S. 564, 16 Sup. Ct. Rep. 1173; Jacksonville, M. P. Ry. & Nav. Co. v. Hooper, 160 U. S. 514, 16 Sup. Ct. Rep. 379; Prospect Park & C. I. R. Co. v. Coney Island & B. R. Co., 144 N. Y. 152, 39 N. E. Rep. 17.

The agreement contained in the deed of conveyance of the right of way cannot be said to be in violation of the public policy of this state since chapter 4203, acts of 1893, section 2848 general statutes of 1906, authorizes the specific performance of contracts in the nature of this one, and if necessary the appointment of a receiver to perform the contract. See 1 Page on Contracts Sec. 326.

The contract is to be construed with reference to its subject matter and the circumstances under which and the purposes for which it was made. Its language so considered requires a continuance of the defendant's agreement to maintain the spur and depot and to operate the trains thereon as stated at least as long as the conditions and relations of the parties thereto continue sub-

stantially as begun, unless superior rights of the public or others properly intervened.

In this case the agreement is that defendant and its successors and assigns shall *maintain* a spur track and a depot thereon and operate trains thereon as agreed, and not to permanently *establish a terminus* of a common carrier railroad corporation and to merely *establish* the main shops of the railroad at a particular town as in the case of Texas & P. Ry. Co. v. Marshall, 136 U. S. 393, 10 Sup. Ct. Rep. 846, or for damages for removing a depot built and used for 36 years under a void parol contract to *establish* a depot at a stated point as in Texas & P. Ry. Co. v. Scott, 23 C. C. A. 424, 77 Fed. Rep. 726; and the facts here are also quite different from those in Sherwood v. Atlantic & D. Ry. Co., 94 Va. 291, 26 S. E. Rep. 943, and Jones v. Newport News & M. V. Co., 13 C. C. A. 95, 65 Fed. Rep. 736, relied upon by the defendant. The last mentioned case accords to the directors of a railroad company the right to terminate a contract that in their judgment was against public interest. This doctrine cannot be maintained under our system of laws.

The conveyance containing the contract was accepted and used by the defendant. The contract is certain and definite in its terms. Possession was taken of the land by the defendant and retained. The contract was completely executed by Taylor and has been partly performed by the defendant. It is apparent from the contract itself that one of the controlling considerations for the conveyance by Taylor to the defendant corporation was "its agreement to maintain said spur track, depot and platform, and to operate all its regular passenger trains upon said spur track to said depot during what is known as the winter tourist season, which consideration is binding upon the party of the second part, its successors and assigns."

Having accepted the conveyance, the defendant is bound by the agreement stated therein as a ·consideration for the conveyance of the right of way, and having received in specie or in kind all the benefits of the conveyance to it, the defendant in equity should bear the burdens imposed by the conveyance thus accepted and used for its corporate purposes in rendering a useful· service to the public, unless a further continuance of it will injuriously affect the service of such railroad to the general public. The damages to the complainant alleged as the result of the failure and refusal of defendant to carry out its part of the agreement are peculiar to the conditions affecting the business with reference to which the agreement was made; they are in their nature such as cannot be ascertained with any degree of certainty, and cannot be adequately compensated for in damages, therefore, an action at law for damages will not afford the complainants an adequate or a reasonably complete remedy. See Lane v. Pacific & I. N. R. Co., 8 Idaho 230, 67 Pac. Rep. 656. See, also, Southern Ry. Co. v. Franklin & P. Ry. Co., 96 Va. 693, 32 S. E. Rep. 485, 44 L. R. A. 297.

The defendant having received in specie or in kind and used the property of complainant in consideration that certain things shall be done by the defendant, its successors and assigns, with reference to the particular property and peculiar business of the complainant, the successful use of which property and business was a controlling consideration for the conveyance, the complainant is in justice entitled to a performance of the defendant's agreement according to its terms as far as it is legally within the power of the defendant to do, unless compliance therewith further, materially interferes with the defendant company's duty to the general public

The bill of complaint alleges that the abandonment

of the depot near complainants' hotel and the removal of the spur track and depot to an inaccessible and undesirable place a half mile away is seriously injurious to the welfare of at least a portion of the public. This is of course admitted by the demurrer, and it cannot be assumed that the service rendered by the defendant railroad company over the spur track and at the depot near the hotel of complainant for more than ten years as alleged, injuriously affected the rights of the public. It is alleged that spur track and depot service similar to that formerly rendered under the agreement but now denied to complainants is being rendered to hotels at other points on the line of defendant's railroad, and this tends to indicate that the general public is not seriously injured by such spur track and depot service.

It does not appear that a specific performance of the agreement will work a hardship on the defendant or be of little utility to the complainants; but on the contrary a serious injury to complainants appears and it is not shown that the performance of the agreement will be unduly burdensome to the defendant or result in material detriment to the public interests.

The peculiar damages alleged as accruing to the complainants by the refusal of the defendant to perform its part of the agreement are to property and business which were the only inducement for the agreement, and are not capable of being adequately compensated by an action for damages. See Joy v. St. Louis, 138 U. S. 1, 11 Sup. Ct. Rep. 243; Franklin Tel. Co. v. Harrison, 145 U. S. 459, 12 Sup. Ct. Rep. 900. The allegations as to the agreement and the subjects to which it relates appear to be sufficiently definite to warrant a decree of specific performance if sustained by the proofs.

The terms of the agreement, the circumstances under which it was made and the purposes to be accomplished

by it and the allegations of the bill of complaint clearly show that the agreement has not been fully performed on the part of the defendant.

Where a court of equity properly acquires jurisdiction of a cause to enforce specific performance of a contract, the court will proceed to administer complete justice by granting appropriate process and by adjudicating all matters properly presented and involved in the case. Injunctions may be granted upon proper showing, and damages awarded when necessary to complete justice in the case. See Lyle v. Addicks, 62 N. J. Eq. 123, 49 Atl. Rep. 1121; Worrall v. Munn, 38 N. Y. 137; Schmidtz v. Louisville & N. R. Co., 101 Ky. 441, 41 S. W. Rep. 1015, S. C. 38 L. R. A. 809; 2 High on Injunctions, (7th ed.) §1120 *et seq.*

The injury complained of was begun October 21, 1906, and the bill for relief was filed January 10, 1907, which appears to be reasonable promptness. Under the facts as they appear an appropriate mandatory injunction should be granted, unless the defendant by its answer and proofs to sustain it can show that the interests of the general public will be injuriously affected thereby, or that the duration of the contract was not to be indefinite as to time as alleged. See 4 Pomeroy's Eq. Jur. §1359; Wolverhampton and Walsall Ry. Co. v. London and Northwestern Ry. Co., 16 L. R. Eq. Cas. 433; 5 Words & Phrases Judicially Defined, 4332; Southern Ry. Co. v. Franklin & P. Ry. Co., 96, Va. 693, 32 S. E. Rep. 485, 44 L. R. A. 297.

In so far as the relief prayed for can be decreed without serious detriment to the public interests the prayer should be granted. From the allegations of the bill of complaint it does not appear that the rights of the general public will be injuriously affected by granting the relief prayed for so far as it extends to the spur track

and depot and the operation of the trains as required by the agreement.

The decree dismissing the bill of complaint is reversed and the cause is remanded with directions to overrule the defendants demurrer, and to require the defendant to answer the bill, and for such further proceedings as shall be consonant with equity practice and not inconsistent with this opinion.

SHACKLEFORD, C. J., and COCKRELL, J., concur;

TAYLOR, HOCKER and PARKHILL, JJ., concur in the opinion.