SOMERS, Respondent, v. MILLER, Appellant.

(142 N. W. 174.)

1. **Contracts—Alteration of Instrument—Sale of Leased Premises—Tenant's Counterclaim.**

An alteration by a landlord of a lease of a farm for part of crops, by insertion of a provision terminating lease on sale of the land, is a material alteration, and not enforceable against the tenant; and, **held,** that the tenant, by voluntarily surrendering the premises to a purchaser during the term, without the landlord's participation, did not thereby acquire a right of action for damages for loss of use of the premises, against the landlord; and a counterclaim by tenant setting up the foregoing facts, does not state a cause of action.

2. **Vendor and Purchaser—Bona Fide Purchaser—Notice of Tenant's Possessory Rights.**

A purchaser of lands in the open and notorious possession of a tenant is chargeable with full knowledge of tenant's actual legal rights under the lease.

(Opinion filed June 24, 1913.)

Appeal from Circuit Court, Lyman County. Hon. WILLIAM WILLIAMSON, Judge.

Action by Frank Somers against R. M. Miller, in which action defendant set up a counterclaim for damages for loss of use of lands leased to him by plaintiff, and alleging an alteration by plaintiff of the lease so as to terminate it on sale of the land, and that defendant, by being dispossessed by the purchaser, was deprived of such use, etc. From an order sustaining a demurrer to the counterclaim, defendant appeals. Affirmed.

*Bartine & Bartine,* for Appellant.

The counterclaim is good. The plaintiff by his own willful act made it impossible for the defendant to do any more for the reason that the plaintiff sold the land to another party, giving him possession.

Where non-performance of the one alleging the breach is caused by the act of the defendant it is enough to allege the excuse. So, also, where the defendant has repudiated the contract on his part, or has disabled himself from performing, in which cases the allegation of the fact without any averment of performance is sufficient. Sutherlands Pleadings, Vol. 1, section 228, and cases cited; Ruhle v. Massey, 2 Ind. 636; Little v. Mer-

cer, 9 Mo. 218; Dowd v. Clark, 54 Cal. 48; Newcomb v. Brackett, 16 Mass. 161

The breach of this contract made between the plaintiff and the defendant consisted in the plaintiff's making it impossible to carry out the provisions of the contract.

*Brown & Brown,* for Respondent.

Not only would an alteration of the writing not alter the contract or impair any of the rights of the defendant under it, but such an alteration as is presumably attempted to be set up in this counterclaim would be to the advantage of instead of a damage to the defendant, as its only effect would be to discharge the defendant from any liability under his covenant to pay rent. 2 Am. & Eng. Ency. of Law (2d Ed.) 217, par. 3, and note 5.

The counterclaim nowhere alleges that plaintiff ever authorized Thompson to claim the right to the use of the premises. or in any way advised or aided or abetted him in taking possession, or in refusing to allow the defendant the use and occupancy of the premises during the season of 1911.

SMITH, J. This is an appeal from an order sustaining a demurrer to a counterclaim in defendant's answer. Other matters are immaterial. The counterclaim, in substance, alleges that about April 1, 1910, plaintiff and defendant entered into a written contract of lease of certain lands belonging to plaintiff for a term of two years, under which the defendant was to pay plaintiff, as rent, a portion of the crops and hay grown on the leased premises. The second paragraph of the counterclaim alleged that some time after the execution of the written contract the plaintiff fraudulently and without the knowledge or consent of the defendant altered and changed said written contract by inserting therein a clause providing that, "in case the plaintiff herein sold said land, that the contract or lease hereinbefore described should cease and should thereby terminate." The third paragraph of the counterclaim states "that during the farming season of 1910 the defendant farmed the said land and settled with the plaintiff under the terms of his said contract; that during the summer of 1910 plaintiff sold and conveyed the premises herein described to one I. E. Thompson; and that the said I. E. Thompson claimed the right to the use and the occupancy of the said premises during all of the season of 1911, and that he did, in violation of the rights of

this defendant, take possession and did use the same, and did refuse to allow this defendant the use and occupancy of the said premises under the terms of his contract aforesaid." "(4) That by reason of the plaintiff's failing to reserve for and save for this defendant his rights to the use of said premises under the terms of said contract, and because the plaintiff fraudulently and without the knowledge or consent of the defendant altered and changed the original contract of lease as aforesaid, and by reason of said change and alteration the terms of said contract were varied and defendant's rights to the use of the land terminated without his consent as aforesaid, this defendant was damaged as follows: In the loss of the use of the premises for the year 1911 in the sum of $250." Plaintiff demurs to this counterclaim on the ground that it does not state facts constituting a cause of action or counterclaim. Respondent's only contention is that the facts stated are not such as to entitle the defendant to a recovery of damages in any sum whatever. In this contention we think respondent is right.

[1] The alleged alteration in the lease which is conceded by the demurrer was material, and of such character as would render the same wholly unenforceable by the plaintiff as against the defendant. But the wrongful alteration of a written contract by one party thereto in no manner affects the legal rights of the other party to the contract. The principle is elementary, and is laid down in 2 Cyc. 181 (b), as follows: "An unauthorized change in an instrument, whether it be a mere spoliation or an alteration, will not deprive the party against whom it is made of any rights nor confer upon any other person any title." It necessarily follows, if the legal rights of the defendant under this written contract of lease were not and could not have changed or affected by the wrongful act of the plaintiff in inserting therein the clause providing for a termination of the lease in case of sale of the leased premises, that defendant's right to possession was not and could not have been terminated thereby. The loss of the use of the leased premises therefore could not have been the result or in consequence of the alleged wrongful act of the plaintiff. Had the purchaser Thompson sought to oust the defendant from possession of the leased premises, under a claim that the lease was terminated by a sale of the premises to himself, and that he had

become entitled to possession as purchaser, and had the defendant incurred the expense and trouble of defending against such claim, the costs and expenses so incurred might perhaps be considered a result of the wrongful act of the plaintiff in altering the lease, for which he would become liable in damages. But the alteration of the lease in no manner affected defendant's rights to defend against a wrongful claim of possession by the purchaser Thompson.

[2] It appears from the facts alleged in the counterclaim that the defendant was in actual possession of the leased premises using and cultivating the same during the summer of 1910, and that Thompson became the purchaser from plaintiff during that season, while defendant was cultivating and in open and notorious possession of the premises. Thompson therefore must have purchased with notice of defendant's possession, which charged him with full knowledge of defendant's actual legal rights under the lease. Thompson therefore had no more right to enter upon the leased premises or to take possession of and use the same than would any other stranger, and the defendant's voluntary surrender of possession to him would no more create a liability for damages against the plaintiff than would defendant's surrender of the premises to an entire stranger. The fallacy of appellant's argument lies in the contention or assumption that the alleged wrongful alteration of the lease changed defendant's right to the use or occupancy of the leased premises, and terminated the same without his consent. The alteration of the lease did not, either in fact or law, terminate his right to the use of the land. If the purchaser, Thompson, took possession of the land without the knowledge or consent of defendant and against his will, the act was a naked trespass as to him. The counterclaim alleges that Thompson as such purchaser claimed the right to the use and occupancy of the premises, and did take posession and use the same and refuse to allow defendant the use or occupancy thereof, but there is no allegation that the plaintiff in any manner participated in depriving defendant of possession, or did any other act than wrongfully to alter the lease. The two things have no legal relation or connection as cause and effect. Appellant's loss of possession could not have been the legal consequence of the alteration in the lease upon the facts alleged in the pleading. Defend-

ant was bound to defend his right to possession against the claims of Thompson as he would against those of any stranger.

The order of the trial court is affirmed.