SMITH, APPELLANT, *v.* BARNES ET AL., RESPONDENTS.

(No. 3,528.)

(Submitted May 17, 1915.  Decided July 7, 1915.)

[149 Pac. 963.]

*Contracts—Alteration—Spoliation—Effect—Pleading — Burden of Proof—Ratification—Waiver — Estoppel — Instructions — Actions—Legal or Equitable—Theory of Case.*

Actions—Legal—Equitable.
  1.  Where a complaint presents an action at law, its nature is not changed by the fact that equitable defenses have been interposed or equitable rights suggested.

Appeal and Error—Theory of Case.
  2.  The supreme court will review a case upon the theory on which it was tried in the district court.

Same—New Trial Orders—Presumptions.
  3.  Where a motion for new trial was heard and denied by a judge other than the one who tried it, his order cannot be aided by those presumptions which are indulged in favor of a like order when made by the trial judge.

Same—Verdict—Conflicting Evidence.
  4.  In an action at law the verdict of the jury based upon substantial, though conflicting, evidence, will not be disturbed on appeal.

Contracts—Alteration—Evidence.
  5.  Evidence, in an action for breach of a contract for the sale and purchase of stock with a provision alleged to have been incorporated therein to the effect that upon payment of the respective installments of the purchase price a proportionate amount of the stock should be delivered to the purchaser, *held* to sustain a finding that the parties did not so contract, but that their contract was changed to the terms pleaded, after execution, and without defendant's knowledge or consent.

Same—Breach—Burden of Proof—Alteration—Pleading.
  6.  In an action for breach of contract, plaintiff has the burden of establishing the contract substantially as alleged; and where the declaration was upon a contract without regard to alterations, and a vitiating alteration (as defined in paragraph 8, *infra*), is alleged and proved by defendant, the action fails.

  [As to burden of proving apparent alteration, see notes in 37 Am. Rep. 260; 86 Am. St. Rep. 128.]

Same—Spoliation—Pleading.
  7.  In the case of a spoliation (as defined in paragraph 8, *infra*), the plaintiff must declare upon the contract as originally made, and if the contract pleaded is not, by reason of spoliation, the agreement of the parties, the action must fail.

Same—"Alteration"—"Spoliation."
  8.  An "alteration" occurs when a written contract is intentionally changed in a material respect after execution by or at the instance of one of the parties and without the consent of the other, while a "spoliation" is the unauthorized change of a written contract by a stranger.

  [As to materiality of alteration, see note in 86 Am. St. Rep. 84.]

Same—Alteration—Effect.

9. The legal effect of an alteration as above defined is to extinguish all the executory obligations of the contract in favor of the party responsible for it, as against the party who does not consent, and the former cannot maintain an action on the contract in either its original or altered form; while the nonconsenting party loses no right and is not required to rescind or repudiate the contract as it actually was made, but may ignore the change and hold the party at fault to the contract as originally made.

[As to what is and effect of alteration, see note in 10 Am. Dec. 267; 17 Am. St. Rep. 97; 86 Am. St. Rep. 117.]

Same—Spoliation—Effect.

10. The effect of a spoliation as defined in paragraph 8, *supra,* is that the contract stands as originally made, without regard to the change.

Same—Ratification—Waiver—Pleading.

11. Ratification and waiver of an alteration or spoliation of a contract are in the nature of estoppel, and, to be available, must be pleaded when an opportunity to make such plea is presented.

Same—Estoppel.

12. The nonconsenting party to a change in a written contract could not be estopped by any action or inaction on his part short of an acceptance of the change.

Trial—Instructions Binding upon Jury.

13. The instructions of the court, whether right or wrong, are binding upon the jury, provided they are applicable within the issues.

*Appeal from District Court, Fergus County; Chas. L. Crum, a Judge of the Thirteenth Judicial District, presiding.*

ACTION by D. F. Smith against John P. Barnes and another. Judgment for defendant Barnes; motion for new trial denied, and plaintiff appeals. Judgment and order affirmed.

*Messrs. H. G. & S. H. McIntire* and *Mr. O. W. Belden,* for Appellant, submitted a brief, and one in reply to that of Respondents; *Mr. H. G. McIntire* argued the cause orally.

*Mr. James A. Walsh* and *Mr. E. C. Russell,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE SANNER delivered the opinion of the court.

The complaint alleges that on June 7, 1910, the defendant Barnes, as party of the first part, entered into a written agreement with the plaintiff Smith and the defendant McCullough, as parties of the second part (they acting for themselves and

one Stack), the material provisions of which agreement are as follows:

"The party of the first part hereby agrees to sell and the parties of the second part agree to purchase all of the stock of the Judith Basin Milling Company, a corporation of the state of Montana, * * * for the sum of $80,000, payable in the manner following, to-wit: Ten thousand ($10,000) dollars cash upon the signing of these presents, receipt whereof is hereby acknowledged; five thousand ($5,000) dollars December 1, 1910, ten thousand ($10,000) dollars January 1, 1911, ten thousand ($10,000) dollars January 1, 1912, ten thousand ($10,000) dollars January 1, 1913, and ten thousand dollars on the 1st day of each succeeding January until the total of said consideration shall have been paid, except as to the last payment, falling due January 1, 1916, which shall be fifteen thousand dollars.

"And it is further agreed and understood that the said stock properly indorsed shall be placed by the said party of the first part in escrow in the Empire Bank & Trust Company in the hands of the cashier thereof at Lewistown, Montana, to be by him delivered upon the payment in full and according to their terms and tenor, notes representing the said deferred payments.

"And it is further agreed and understood by and between said parties that said notes shall bear and draw interest at the rate of eight (8) per cent per annum, interest payable annually, and upon the full payment of each of said notes, a proportionate amount of said stock shall be delivered by the cashier of said bank to said second parties, but upon the failure of the second parties to make payments or any of them, or the interest accrued on any of said payments, then the first party shall have the right and option to demand of said bank and upon demand said bank shall deliver to him said certificates so placed in escrow, and thereupon the second parties shall forfeit to the first party all sums theretofore paid as liquidated damages under this contract."

After explaining that the interest of Stack has been assigned to the plaintiff, and that McCullough is made a defendant because of his refusal, after demand, to join the plaintiff in the action, the complaint further alleges (paragraph 5) : ''That said contract or writing does not fully or plainly set forth the understanding and agreement of the parties thereto as it should in that the true understanding and agreement of said parties at and prior to the execution thereof was that upon payment of the respective installments of money provided for in said contract or agreement, and at the time of such payments, a proportionate amount of the stock therein mentioned should be delivered to and become the absolute property of said parties of the second part, and in this regard said writing is contradictory and ambiguous; the true intent, understanding, and agreement of the parties thereto being that, for every $1,000 paid on account of the purchase price, there should be delivered to said parties of the second part one-eightieth of the total capital stock of the Judith Basin Milling Company, a corporation organized and doing business under and by virtue of the laws of the state of Montana, agreed to be sold thereby, to-wit, 1,000 shares of the par value of $100 each.'' Following this paragraph are allegations to the effect that the sum of $10,000, acknowledged by the agreement, was in fact paid, and the notes for the deferred installments were actually executed as required thereby; that at the maturity of the note due December 1, 1910, plaintiff tendered the amount thereof, with interest, to the Empire Bank & Trust Company, coupled with a demand for the delivery of a proportionate amount of said stock, but this tender and demand were, at the instance of defendant Barnes, rejected and refused; that at the maturity of the note due on January 1, 1911, plaintiff offered to pay the full amount thereof, with interest, coupling said offer with a like demand, which offer and demand were similarly rejected and refused; that Barnes has failed and refused to deliver or cause to be delivered any of said stock to the plaintiff or to return the said sum of $10,000 paid under the contract, or to return or cause to be

returned the promissory notes executed and delivered to him under the agreement, and has incapacitated himself from performing his agreement, by selling and transferring said stock to a stranger; that said stock is now worth $100 per share, and, in consequence of the acts of Barnes, plaintiff has sustained damages which he prays in the sum of $30,000, and "such further relief in the premises as may be meet and equitable."

McCullough and Barnes filed separate answers; that of Barnes being quite elaborate. The effect of them, so far as we deem it material to the purposes of these appeals, is to deny the agreement, as set out in the complaint; to admit the execution of an agreement similar in terms, save that it provided for the delivery of the stock only upon the full payment of the entire consideration; to plead that the words "each of," before the words "said notes," and the words "a proportionate amount of," before the words "said stock," were interlined and inserted in said agreement after its execution and delivery, and without the knowledge or consent of Barnes; to deny any tender or offer to pay under the contract as it was actually made; to aver that, of the first payment of $10,000 made upon the execution of the contract, $8,500 were the proceeds of property belonging to the Judith Basin Milling Company, sold at the instance of plaintiff and his associates; and to claim default on their part in the payments due December 1, 1910, and on January 1, 1911, in consequence of which Barnes exercised the option vested in him by the contract to withdraw said stock from the Empire Bank and to declare a forfeiture of all the money actually paid thereon. The affirmative allegations of the answers are controverted by reply.

The cause was tried before Honorable C. L. Crum, sitting with a jury. Verdict was for the defendant Barnes, and judgment went accordingly. Plaintiff's motion for a new trial was heard by Honorable Roy E. Ayers, who by order denied the same. From that judgment and order plaintiff appeals and seeks a reversal upon three grounds, *viz.*: Insufficiency of the evidence to justify the verdict; that the verdict is contrary to the instruc-

tions and therefore against law; and that certain errors of law were committed in rulings admitting evidence, refusing instructions offered by the plaintiff, and giving others at the instance of the defendants.

1. As affecting the importance of the instructions to the jury, the respondents insist that this is a suit in equity and not an action at law. This is said to be so because of the allegations of paragraph 5 of the complaint, coupled with the prayer for equitable relief; because the answer of Barnes pleads equitable defenses, is grounded on an equitable right, and asks equitable relief; and because the appellant treats the cause as in equity by presenting the evidence to this court in the form of question and answer. So far as the argument is based upon the character of the answer and the state of the transcript, the response is easy. If the complaint presents an action at law, its [1] nature is not changed by the fact that equitable defenses have been interposed or equitable rights suggested (*Chessman* v. *Hale,* 31 Mont. 577, 587, 3 Ann. Cas. 1038, 68 L. R. A. 410, 79 Pac. 254; *Wisner* v. *Ocumpaugh,* 71 N. Y. 113, 116); and, whatever inference might otherwise be deducible from the form of the transcript, it is sufficient to say that in this instance counsel for appellant have followed the express order of the trial judge. We confess, however, that the complaint has given us some difficulty. Apart from the allegations of paragraph 5, the cause presented is clearly an action at law to recover damages for the alleged failure of Barnes to carry out the terms of the contract annexed to the complaint; but paragraph 5, without averring mutual or any mistake, and without asking a reformation, asserts that the contract annexed to the complaint does not set forth the understanding or agreement of the parties (in other words, is not the contract between them). How the appellant could recover damages for the breach of a contract which, unreformed, is not the contract of the parties, it is difficult to understand; and it is no less difficult to perceive how equitable relief could be granted upon the unaided allegations of this paragraph. The complaint, however, was not attacked

[2]  by demurrer or motion of any kind.  Resort may therefore be had to the subsequent proceedings to ascertain on what theory the cause was tried in the court below.  So doing, we ascertain beyond question that the cause was treated and considered, in every respect, by everyone, as an action at law.  Paragraph 5 was ignored; no attempt being made by the appellant to assert any right or to present any evidence under it.  A jury was called as of course, to whom no special findings but a general verdict was submitted.  Instructions covering every supposed aspect of the law were asked, refused and given after settlement in the manner appropriate to an action at law.  We shall therefore accept the appellant's contention that the cause is before us as an action at law.

And it is as well for the respondents that this is so, for, though the importance of the instructions is thereby augmented, this court is shorn of its power to weigh the evidence, and must confine itself to the determination whether a sufficient *quantum* of evidence exists to justify the verdict.  We note, in passing, the suggestion of appellant that, since the motion for new trial [3]  was heard and denied by a judge called in, his order cannot be aided by those presumptions which are indulged in favor of a like order when made by the judge who tried the case. (*Williams' Estate,* 50 Mont. 142, 145 Pac. 957; *Gibson* v. *Morris State Bank,* 49 Mont. 60, 140 Pac. 76.)  This is true, and its effect is to deprive the verdict of any support in consequence of the order; but it does not authorize a departure from the rule [4]  that, in an action at law, the verdict of the jury, based upon substantial, though conflicting, evidence, will not be disturbed by this court on appeal.

2.  Treating the cause as an action at law, we premise our discussion of the evidence by remarking that, under his com- [5]  plaint, the execution of the particular contract pleaded was a necessary thing to be established by the appellant, since, as his counsel say in their belief, the allegations of paragraph 5 were wholly abandoned.  It matters not what form the issue took, the appellant could not prevail unless he established the

execution of the contract as pleaded by him; and, needless to say, he could not prevail if, at the close of the case, the evidence should justify the conclusion that, though there was a contract between the parties touching the same subject matter, it was essentially different in terms. And this is the form taken by the issue in both the pleadings and the proof. It is conceded that the contract, as originally drafted and submitted to the parties, was typewritten and required the delivery of the stock upon full payment of the notes; that by pen interlineations it was changed to require the delivery of a proportionate amount of stock upon the payment of each of the notes; and that the change is a material one. This being true, the circumstances under which the change was made, as regards the consent or knowledge of Barnes, and as regards the time of making, were fundamentally important to the case viewed from either side. Touching these circumstances, the testimony of Smith, supported in great measure by that of Stack and Chase, is to the effect that the change was made on the evening of June 7, 1910, before delivery of the check for the first payment, before final delivery to the depositary of the papers for escrow, in the presence and with the consent of Mr. Barnes. It must therefore be acknowledged that the jury could, with warrant in the evidence, have so determined.

The verdict implies the opposite conclusion, and for it the record contains the following support: Mr. Barnes testified that the contract for the sale of the stock to plaintiff and his associates was drafted by attorney De Kalb, and was executed in triplicate on the evening of June 7; that the change in question had not then been made and did not then appear on any one of the three copies composing the set; that he did not know when the change was made, but, after the contract was signed, he rejected a suggestion of plaintiff for such a change; that, as the contract was executed, it provided for holding all the stock until all was paid for, and was satisfactory to him; that, as changed, it was not satisfactory; that he never did consent to the change, and first learned of it when in California in the

latter part of December, 1910, or early in January, 1911. Mr. De Kalb says, in effect, that the contract, as typewritten, was prepared by him and presented for execution on the evening of June 7, 1910, at a meeting at which Smith, Barnes, McCullough, Chase and himself (possibly another person) were present; that he witnessed the signing of the contract, and would not have done so unless it had been signed by the parties; that the change in question had not then been made, and he does not recall that it was discussed in his presence; that he left the meeting before Mr. Barnes did, but everything was then complete, and the papers for escrow had been delivered to Chase, as agent for the bank; that the change had not been made when he left, and he first learned of it some time later, when asked by the cashier of the Empire Bank to construe the contract.

Mr. McCullough testified: "The contract was signed * * * by Smith and Barnes and myself and a witness. * * * It was read over in the presence of all the above-mentioned persons by Chase, to the best of my recollection. * * * Thereupon Smith, Barnes, and I signed it, as did Mr. De Kalb. * * * It is impossible for me to state definitely whether or not the words 'each of' and the words 'a proportionate amount of' * * * were interlined at our meeting referred to and before the contract was signed, or whether they were interlined afterward. I did not know and do not know now whether Mr. Barnes knew of the interlineations before or after signing the contract. * * * I have no recollection of hearing anything said between Barnes and Smith and myself or anyone else regarding the interlineations or the effect thereof. I do not know of anything being done by the defendant Barnes, or the plaintiff, or myself, in regard to these interlineations. * * * I cannot now recall anything being said as to when or how the stock was to be delivered, and I do not think I had any definite understanding on that phase of the contract, excepting that the contract, as it was signed and delivered, was then satisfactory to me." Finally, the contract, as changed, contains the requirement that, upon the payment of each of the notes, a pro-

portionate amount of the stock should be delivered to the purchasers by the escrow depositee; but the record shows the stock was deposited in such shape that compliance with this provision was impossible.

This evidence, given its full effect, was amply sufficient to warrant the conclusion implicit in the verdict that the parties did not contract as alleged in the complaint, but that the contract they did make was changed in the manner asserted by Barnes, after execution and without his knowledge or consent.

It seems to us that this is decisive. The manual act of making the change was performed, it is true, by Chase, which fact gives rise to much discussion. For the purpose of claiming a failure of proof, appellant contends that no fraud or procurement on his part is shown, and he characterizes the change as a mere spoliation, not a fraudulent alteration as alleged; but this distinction, if accepted, cannot aid him. To prevail, he was [6] obliged to maintain his own case, essential to which was the establishment of the contract substantially as alleged. Where the declaration is upon an instrument without reference to alterations, and a vitiating alteration is alleged and proved by defendant, the action must fail. (2 C. J. 1259.) So, too, it is [7] fatal if the contract pleaded is not, by reason of spoliation, the agreement of the parties. In the case of a spoliation the plaintiff must declare upon the contract as it was originally made. (2 C. J. 1259; *City of Orlando* v. *Gooding,* 34 Fla. 244, 15 South. 770; *Perkins W. & A. Co.* v. *Tillman,* 55 Neb. 652, 75 N. W. 1098; *Union National Bank* v. *Roberts,* 45 Wis. 373.) Nor can the distinction invoked injure the respondents. Technically speaking, an "alteration" occurs when a written con- [8] tract is intentionally changed in a material respect after execution, by or at the instance of one of the parties, and without the consent of the other, whereas a "spoliation" is the unauthorized change of a written contract by a stranger. (1 R. C. L. 966; 7 Words and Phrases, p. 6615.) The legal effect of an alteration is to extinguish all the executory obligations of [9] the contract in favor of the party responsible as against

the parties who do not consent (Rev. Codes, sec. 5069) ; and the appellant, if the change was an alteration procured by him, could not maintain this action, nor maintain any action, upon the contract, in either its original or its altered form (*Newell* v. *Mayberry*, 3 Leigh (Va.), 250, 23 Am. Dec. 261). But the non-consenting party loses no right. He is not obliged to rescind or repudiate the contract as it actually was made. He may ignore the change, because it does not express his contract, and hold the other party to the contract according to its original terms (Bishop on Contracts, sec. 748; *Diamond* v. *Inter-Ocean N. Co.*, 29 Okl. 323, 116 Pac. 773; *Somers* v. *Miller*, 32 S. D. 133, 142 N. W. 174; *Lane* v. *Pacific etc. Ry. Co.*, 8 Idaho, 230, 67 Pac. 656; *Glover* v. *Green*, 96 Ga. 126, 22 S. E. 664; *Cutts* v. *United States*, 6 Fed. Cas. 1086, 1 Gall. 69) ; and this, a right peculiar to the nonconsenting party in the case of an alteration, is the final effect of a spoliation as to both parties. The contract stands as originally made, without regard to the change. (3 Page on Contracts, sec. 1515.) So that, whether the change in question was an alteration or a spoliation, the right of Barnes to do what he seeks to do, and what the allegations of fraudulent procurement were clearly intended to entitle him to do, cannot be assailed.

It is insisted in this connection, however, that Barnes cannot stand upon the contract as it was actually made, because of ratification or waiver. This ratification or waiver is claimed because of his retention of the first payment after knowledge of the change, and "because of his failure to examine his own copy or that of the bank, or to do anything to avoid the contract until May, 1911." There is no room for this contention in the pleadings. Ratification and waiver are in the nature of estoppel, and, to be available, they must be pleaded when an opportunity to make such plea is presented. (*Capital Lumber Co.* v. *Barth*, 33 Mont. 94, 81 Pac. 994; *City of Butte* v. *Mikosowitz*, 39 Mont. 350, 102 Pac. 593; *Erickson* v. *First Nat. Bank*, 44 Neb. 622, 48 Am. St. Rep. 753, 28 L. R. A. 577, 62 N. W. 1078.) Not only is there no such plea, but in point of fact there

could be none, because the issues were made upon the character of the contract as executed. But this claim of ratification or waiver also betrays a misconception of Barnes' position. If, as we have held, he could ignore the change and stand upon the contract as made, he was certainly not required to avoid it. It was his right to retain the first payment, to permit the appellant to perform the contract, and to forfeit the payment, if the appellant failed. Unless Barnes received something from the [12] appellant under the contract as changed, with knowledge of the change, his rejection, through the bank, of appellant's tenders, gave notice of his refusal to abide the change. As he was not required to avoid the true contract, and as he could ignore the change until something occurred to compel him to accept or reject it, he could not be estopped by any action or inaction which amounted to anything less than an acceptance of the change.

3. The verdict is assailed as contrary to the court's instructions numbered 6, 7, 8, 9, 10, 12 and 15. According to appellant, these instructions, except No. 15, "relate to and cover the principle of law that a party to a contract is bound by it whether it has been altered without his consent or not, if he retains any benefit received under it, after knowledge on its part of any alteration in it; in other words, that retention of benefits constitutes a ratification of the contract as altered." We agree that the instructions of the court, right or wrong, are binding [13] upon the jury (*Lynes* v. *Northern Pac. Ry. Co.*, 43 Mont. 317, Ann. Cas. 1912C, 183, 117 Pac. 81), with the qualification, however, that they are applicable within the issues (*Babcock* v. *Maxwell*, 29 Mont. 31, 36, 74 Pac. 64); but, under the statement of counsel, this attack must fail, for it is not a necessary deduction from the evidence that Barnes retained any benefit received under the contract as changed, with knowledge of the change, and the instructions touching ratification by reason of such conduct were inapplicable because they were not within the issues. Instruction 7 "contains the feature that there must be promptness had on the part of one who wishes

o

to disaffirm a contract''; but as no rescission or disaffirmance of the contract made between the parties is sought in this case, this instruction cannot be said to have been defied by the verdict. Special emphasis is laid upon instruction No. 15, which charges the jury in effect to ignore the financial affairs of the Judith Basin Milling Company and the relations of appellant to the same; but the verdict, having sufficient basis in the fact that appellant failed to maintain the execution of the contract as alleged, does not imply that this instruction was not duly observed.

4. A reversal cannot be justified by the errors of law pressed upon our attention. In view of the fact that the cause rested primarily upon the identity of the contract sued on in this case, we do not regard as important the rulings admitting evidence of the source of the first payment, and we cannot agree that error was committed in receiving evidence of the change in the contract after its execution. We find no admissions in the pleadings precluding the reception of this evidence. Appellant's offered instructions, 4, 5 and 13, were under the pleadings properly refused. If what we have said above regarding the right of a party to a contract which has been changed after execution without his consent, to ignore the change and stand upon the contract as made, is correct, there was no substantial error in the court's instructions 2 and 3, so far as appellant is concerned. The complaint against instructions 4 and 5 is, in our opinion, without any merit.

The judgment and order appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.